Charles Anderson MILLER,
Petitioner–Appellant,

v.

Daniel B. VASQUEZ, Warden, et al.,
Respondents–Appellees.

No. 88–5793.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 7, 1988.*

Decided March 3, 1989.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Charles Anderson Miller, Vacaville, Cal., pro se.

Joan Comparet, Deputy Atty. Gen., State of Cal., Los Angeles, Cal., for respondents-appellees.

Before BROWNING, WALLACE and BRUNETTI, Circuit Judges.

WALLACE, Circuit Judge:

State prisoner Miller appeals from the denial by the district court of his petition for habeas corpus. He argues that his conviction was constitutionally flawed because (1) he did not receive a jury trial on a particular sentence enhancement provision, (2) his conviction was not supported by sufficient evidence, and (3) the investigating police officer failed to collect potentially exculpatory evidence. The district court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. § 2253. We affirm in part and reverse and remand in part.

I

On the evening of April 12, 1984, Deborah Darien entered a bar in Montclair, California, ordered a drink, and sat at a table with several other people. One of these people, a stranger to her, asked her to dance. While they were dancing, the stranger identified himself as "Chuck Miller." During the evening, Darien and Miller danced five to seven times. She rebuffed his subsequent efforts to see her again. She was able to get a good look at Miller over the course of the evening.

Darien left the bar alone a few minutes after 1:00 a.m. and drove home. She parked in the lot next to the apartment complex where she lived and noticed, in her rear view mirror, two headlights of a car coming into the parking lot. The incoming vehicle parked two to three spaces away.

Darien locked her car and began walking toward her apartment. She was grabbed from behind by an assailant who ordered, "Get in the car, and I won't hurt you." The assailant held a knife with a blade five to six inches long against her rib cage. The assailant's vehicle, which had been parked on an incline, then began to roll backwards. As the assailant reached out with his right hand to stop his vehicle from rolling, Darien broke free from his left hand. As she ran, the assailant tackled her. The assailant immediately pulled her up from the ground and ordered her to get into his car, threatened to kill her, and dragged her to the vehicle. As the assailant reached out to open the door, Darien screamed and dug her fingernails of both hands into his arm, causing the assailant to release her.

Darien backed away and recognized the assailant as Miller. Darien yelled, "I don't know what you're doing. I didn't do anything to you. Why are you doing this to me?" Miller then said something to the effect of, "You slapped me." Darien responded, "I don't know what you are talking about. I didn't slap you." Miller suggested that they go to her apartment and call the police. Darien refused, and Miller responded, "Well, don't do that again." As he turned away and started walking toward his car, Darien ran to her apartment.

That afternoon, Darien called the police and reported the crime. Police Officer Allen went to Darien's apartment and interviewed her. Although Darien informed him that the jacket she had been wearing during the attack had a spot of blood on it, Allen did not collect this evidence. A few days later, she washed the jacket, precluding any test on the blood.

Miller was charged in San Bernardino County Superior Court with two counts: (1) assault with a deadly weapon, and (2) false imprisonment. The charge included a weapon enhancement for using a knife. The state also sought enhancements for Miller's two prior serious felony convictions and two prior prison terms. At trial, Miller admitted the prior serious felony convictions and prison terms. His motion to dismiss count II was granted. The jury returned a verdict of guilty on count I.

Miller was sentenced to a total prison term of 14 years: the maximum term of four years on count I, to be followed by consecutive terms of five years each for his prior serious felony enhancements. Miller also was sentenced to two years for his two prior prison term enhancements, but this portion of the sentence was stayed. Miller was also ordered to pay $3,000 in restitution.

Miller filed a notice of appeal and petition for writ of habeas corpus in state court, both of which were denied. He then filed two petitions for review in the California Supreme Court, which were denied.

Miller then sought habeas relief in the federal district court. His case was assigned to a magistrate who, without an evidentiary hearing, made written findings of fact. The district court adopted the magistrate's findings, and dismissed Miller's petition. From that dismissal, Miller timely appeals.

## II

■ We review the denial of a petition for habeas corpus independently. *Weygandt v. Ducharme*, 774 F.2d 1491, 1492 (9th Cir.1985). We consider each of Miller's challenges in turn.

### A.

Miller argues that his due process rights were violated because he did not receive a jury trial on the sentence enhancement provision which added ten years to his prison term.

■ In count I, Miller was charged with assault with a deadly weapon under California Penal Code § 245(a). Section 245(a) provides that "[e]very person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury is punishable by imprisonment ... fine ... or ... both...." The prosecution also charged Miller with two prior felony convictions in order to invoke California Penal Code § 667(a), which provides that any person convicted of a "serious felony" who has had a prior serious felony conviction shall receive a five-year enhancement for each

such prior conviction. Miller admitted both prior serious felony convictions.

The term "serious felony" in section 667(a) is defined under California Penal Code § 1192.7(c). *See* Cal.Penal Code § 667(d). Under section 1192.7(c), a serious felony may include "any felony in which the defendant personally used a dangerous or deadly weapon." Cal.Penal Code § 1192.7(c)(23).

Miller points out that sections 1192.-7(c)(23) and 667(a) require that a defendant personally use a weapon, whereas section 245(a), which defines the crime of assault with a weapon, does not. *People v. Equarte*, 42 Cal.3d 456, 466, 229 Cal.Rptr. 116, 722 P.2d 890 (1986). He contends that he was denied due process because sections 667(a) and 1192.7(c)(23), with their personal use element, were never specifically charged or put before the jury.

We need not decide whether it was constitutional not to allow the jury to decide the personal use issue, *see In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) (due process requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime"), because any error here was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The jury convicted Miller of assault with a dangerous weapon after a trial which allowed no suggestion that anyone other than Miller had used the knife. Beyond a reasonable doubt, the jury would have found the personal use element had it been permitted to do so.

■ Miller also argues that the enhancement provision should not have been applied to his sentence because his actions did not constitute a section 667(a) violation as defined in California Penal Code § 1192.7(c)(23). He argues that assault with a deadly weapon does not qualify as a "serious felony" for purposes of sections 667(a) and 1192.7(c)(23). Although the district court rejected this claim on its merits, we need not address it. Whether assault with a deadly weapon qualifies as a "serious felony" under California's sentence en-

hancement provisions is a question of state sentencing law. *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir.1985) (federal habeas relief "unavailable for alleged error in the interpretation or application of state law"), *cert. denied*, 478 U.S. 1021, 106 S.Ct. 3336, 92 L.Ed.2d 741 (1986).

### B.

■ Miller next argues that his conviction was not supported by sufficient evidence. In reviewing whether this challenge implicates Miller's due process rights, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *see Newton v. Superior Court of California*, 803 F.2d 1051, 1058–59 (9th Cir.1986) (applying *Jackson* standard on review of state prisoner's habeas petition challenging sufficiency of the evidence), *cert. denied*, 481 U.S. 1070, 107 S.Ct. 2464, 95 L.Ed.2d 873 (1987); *Tamapua v. Shimoda*, 796 F.2d 261, 263 (9th Cir.1986) (same).

Miller argues that because some factual discrepancies in the evidence exist, the guilty verdict must be set aside. However, the *Jackson* standard is clearly met here. Darien testified in detail regarding her attacker and identified Miller as the perpetrator of the crime. Testimony was also introduced from a fellow prisoner that Miller had bragged about the attack while incarcerated. Viewing this evidence most favorably to the prosecution, we conclude that a rational trier of fact could have found all elements of Miller's crime beyond a reasonable doubt.

### C.

Miller argues that he was denied due process because the investigating officer failed both to collect the victim's bloodstained jacket and to photograph Miller's scratched arms. Miller's due process argument is twofold. First, he argues that the police's failure deprived him of relevant, exculpatory evidence, which the state was required to collect under *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (*Trombetta*). Second, Miller argues that the failure to collect this potentially exculpatory evidence was the result of investigating officer Allen's bad faith.

■ The due process clause can be implicated when a defendant is denied access to certain evidence. *See United States v. Valenzuela–Bernal*, 458 U.S. 858, 867–68, 102 S.Ct. 3440, 3446–47, 73 L.Ed.2d 1193 (1982). This protection is triggered when a defendant requests from the prosecution evidence that is material and exculpatory. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Evidence is constitutionally material if it (1) "possess[es] an exculpatory value that was apparent before the evidence was destroyed"; and (2) is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489, 104 S.Ct. at 2534.

We are not persuaded by Miller's argument that *Trombetta* imposes upon police a duty to obtain evidence. The Supreme Court in *Trombetta* was confronted with a situation in which the police had obtained but failed to preserve breath samples. The Court held that the government may have a duty to *preserve* evidence after the evidence is gathered and in possession of the police. *Id.* at 488–90, 104 S.Ct. at 2533–34; *see also United States v. Weisz*, 718 F.2d 413, 435–37 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984). *Trombetta* did not impose a duty to *obtain* evidence. Thus, *Trombetta* does not control this case.

Miller has not cited a case, nor have we found one, which holds that the due process clause is violated when the police fail to gather potentially exculpatory evidence. On the contrary, the cases we discovered hold to the contrary. *Colon v. Kuhlmann*, No. 87 Civ. 2980, slip op., 1988 U.S. Dist.Lexis 5890 (S.D.N.Y. June 3, 1988) [1988 WL 61822] (failure to collect rape victim's underpants did not violate due process because due process clause "does not require that particular evidence be gathered"), *aff'd on other grounds*, 865 F.2d 29 (2d Cir.1988) (per curiam); *State v.*

*Pemental,* 434 A.2d 932, 936 (R.I.1981) (in sexual assault case, failure to gather bed linen did not violate due process).

Moreover, as the Court's recent opinion in *Arizona v. Youngblood,* —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (*Youngblood*), makes clear, even failure to preserve evidence that is only *potentially* useful does not violate due process in the absence of bad faith on the part of the police. *Id.* 109 S.Ct. at 337; *see also United States v. Sherlock,* 865 F.2d 1069, 1071 (9th Cir.1989). Youngblood was convicted of child molestation, sexual assault, and kidnapping. Semen samples were collected from the victim's body, but were not tested in a timely fashion. The victim's clothing was not refrigerated and subsequent testing was too late to be helpful. The Arizona Court of Appeals reversed the conviction, relying on expert trial testimony which demonstrated that timely performance of the tests on properly preserved samples could have produced results that might have completely exonerated Youngblood. The Arizona Supreme Court declined to review the decision.

The Supreme Court reversed. After reviewing its decisional law in this area, the Court declared:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady,* makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in *Trombetta, supra,* 467 U.S., at 486, 104 S.Ct. at 2532, that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause, see *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941), as imposing on the police an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

*Youngblood,* 109 S.Ct. at 337 (parallel citations omitted). Although *Youngblood* does not directly apply because it dealt with failure to preserve rather than failure to gather potentially exculpatory evidence, there are similarities which persuade us. In the case before us, as in *Youngblood,* the evidence which the police failed to gather was only potentially exculpatory. Since, in the absence of bad faith, the police's failure to *preserve* evidence that is only potentially exculpatory does not violate due process, then a fortiori neither does the good faith failure to *collect* such evidence violate due process.

Miller also argues, however, that the police's failure to collect Darien's bloodstained jacket and to photograph his arms was motivated by bad faith. Miller argues that Allen harbored animosity toward him because Allen knew of Miller's prior criminal record and because Allen believed Miller to be a former member of the Aryan Brotherhood.

■ We hold that a bad faith failure to collect potentially exculpatory evidence would violate the due process clause. As the Court in *Youngblood* observed, limiting the scope of the due process clause in this context to a bad faith failure to collect such

evidence "both limits the extent of the police's obligation ... to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Id.*

█ The record contains evidence that would support Miller's bad faith allegation. In a discussion with his supervisor, Allen referred to Miller by using an extremely derogative expletive. Allen, an experienced police officer, interviewed Darien at her apartment less than 24 hours after the attack. Although Allen then learned of the existence of Darien's blood-stained jacket, he did not collect it. At trial, Allen testified that he had forgotten the jacket. At the preliminary hearing, Allen similarly testified that after leaving Darien's apartment, he forgot about the jacket until he was preparing to come to court. Miller testified, however, that during the evening which followed the Darien interview, Allen mentioned the jacket in a discussion at the police station. The judge presiding over the preliminary hearing indicated that Allen's claim to have forgotten the jacket lacked credibility. Finally, Miller alleges that Allen tried to dissuade witnesses from testifying by informing them of Miller's prior criminal history and indicating that their testimony would not exonerate Miller. Taken as a whole, these allegations and evidence raise a colorable bad faith claim.

Although Miller raised this bad faith claim in his federal habeas petition, the district court failed to address it. We therefore reverse the dismissal of Miller's habeas petition and remand for a determination of Miller's bad faith claim. On remand, the district court should satisfy itself that Miller exhausted this issue in the state court. If Miller has exhausted this claim, then the district court may want to rule on Miller's request for an evidentiary hearing. We express no opinion on the need for an evidentiary hearing.

Each party shall bear its own costs.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.