Tony **COOKS**, Plaintiff,

v.

**COUNTY OF LOS ANGELES, et al.,** Defendants.

**No. CV 87–7937–DWW.**

United States District Court,
C.D. California.

April 7, 1989.

Mark Kleiman and Stanley K. Jacobs, Los Angeles, Cal., for defendants.

Anthony Serritella and H. Anthony Nicklin, Los Angeles, Cal., for plaintiff.

## MEMORANDUM OF ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANTS

DAVID W. WILLIAMS, Senior District Judge.

On the evening of January 19, 1980, John and Barbara Gould returned home in their car driven by Mrs. Gould and parked it near their apartment in Paramount, California. As Mrs. Gould paused to lock her car, she heard someone yell, "let's get him!" and she observed three males beating her husband as he walked toward their home. She ran toward the scene of the attack and one of the males who she identified at the trial as being the plaintiff, Tony Cooks, faced her and cautioned her from coming any nearer. He stood approximately 10 feet from Mrs. Gould. After this first encounter, Mrs. Gould ran toward her apartment building to obtain help and when she returned, the men were still beating her husband. Once again she identified Tony Cooks as the man who faced her for the second time and cautioned her against yelling for help. Her ability to see him was assisted by a nearby streetlight that illuminated the area. She testified that her in-court identification of Cooks was based upon the two opportunities she had to observe him that night, and not upon a photo lineup that she saw at a later time. Mr. Gould died from the beating 21 days later.

The crime occurred within the jurisdiction of the Los Angeles County Sheriff's Department. Vernon Clover and Al Sett were two of the sheriff's deputies who handled parts of the investigation of the offense. They interviewed all persons that came to their notice as possibly having any helpful information, and they made notes on these interrogations which became a

part of the file of accumulated evidence. Eventually, Tony Cooks was arrested as a suspect in this case and was indicted. During the period of investigation, the officers contacted Helen Foster who lived approximately 177 feet from the attack. Mrs. Foster testified that she saw Tony Cooks run by her home after the attack and that he came within 25 feet of her. She recognized him as being a person she had seen before in the neighborhood. On March 7, 1980, Mrs. Foster observed Tony Cooks on the sidewalk near her home and telephoned the sheriff's station and Cooks was arrested.

On the evening of the attack, and during the course of the police investigation that immediately followed their being summoned to the scene of the crime, sheriff's deputies filled out field interview cards on all young males they encountered, and a person named Douglas Henderson was detained at the location approximately 200 yards from the crime scene. Defendant Clover prepared a field interview card on Henderson but found nothing to invoke his suspicion that Henderson had anything to do with the crime and Henderson was allowed to go his way. The card which contained the name, address and other identification of Henderson was placed in the investigation file.

On March 7, 1980, witness Helen Foster was shown a photo lineup which included a photograph of Henderson, and she stated that she knew Douglas Henderson and that he was not the person she saw passing her house just after the beating took place. Mrs. Foster worked as a Crossing Guard at the corner in front of her home for a number of years, and was familiar with the young people that lived in the neighborhood. After Mrs. Foster was shown the photo lineup on March 7, she was reinterviewed by a sheriff's deputy who was making an additional effort to see if Henderson could be linked to the crime and Mrs. Foster stated positively that Henderson was not, in her opinion, one of the three males who beat Mr. Gould.

Tony Cooks was tried in front of a jury a total of five times. The first jury hung 10 to 2 in favor of guilty. The second jury trial was declared a mistrial because a juror went to the scene of the crime after being instructed not to do so. The third jury hung 10 to 2 in favor of guilty. The fourth jury found Cooks guilty but the trial judge granted a new trial and this was reversed on appeal. In a separate appeal, the Court of Appeal reversed the guilty verdict of the fourth trial and ordered a new trial based upon improper jury instructions given by the trial judge. The fifth trial resulted in a verdict of not guilty. During the long period of time involved in the holding of these several trials, Tony Cooks remained on bail and was not imprisoned.

After being acquitted, he caused this civil suit to be filed against the County of Los Angeles, Sheriff Sherman Block and deputies Clover and Sett claiming a violation of his civil rights under 42 U.S.C. Section 1983. His action does not include as defendants any member of the county prosecutor's office who prosecuted the various trials, possibly recognizing the prosecutorial immunity discussed in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The complaint which was filed in the Superior Court and removed to this court is for damages for intentional infliction of emotional distress, violation of civil rights, conspiracy to violate civil rights and the spoliation of evidence.

The complaint was filed in September 1987, and both sides have engaged in an abundance of discovery following which the defendants moved this court for summary judgment, or in the alternative, a partial summary judgment. The plaintiff has strenuously resisted the granting of either motion and both parties have favored the court with an abundance of points and authorities which they claim supports their theories.

During the course of preparing for the defense of Tony Cooks in the criminal trial, his attorney made discovery demands from the prosecution which broadly requested the notes of interviews taken with persons who might have been able to offer helpful information. The prosecutor claims to

have turned over to the criminal defense lawyer, all bits of evidence that he intended to use at the criminal trial or which, in his opinion could be helpful to the defense in resisting the charges. The field investigation card which a sheriff's deputy filled out the night of the crime after contacting Douglas Henderson was never turned over to Cooks' defense lawyer until after the fourth trial. It is the contention of the defendants in this case that the card was placed in an investigation file and became lost, and was not discovered until after the fourth trial at which time it was immediately and voluntarily turned over to Cooks' lawyer.

The basis of the present section 1983 action is upon the claim of plaintiff Cooks that the card was not turned over to Cooks' attorney because of either an intentional conspiracy on the part of law enforcement officers to suppress it as evidence, or that if unintentional, the omission was through gross negligence on the part of law enforcement. The plaintiff in the instant case further contended that the field card constituted exculpatory evidence which, if produced earlier, would have led to an acquittal of Cooks much before the fifth trial.

The issues in this case, therefore, are: (1) was the card exculpatory in nature such that it was material evidence of Cooks' innocence prior to the fifth trial; (2) was there a conspiracy on the part of law enforcement to suppress the card as evidence; (3) or was the officer negligent because of a lack of proper training that led to the card being mislaid; and (4) were any of the deputies guilty of spoliation of evidence.

## EXCULPATORY EVIDENCE

■ The principle thrust of the plaintiff's case is that the nature of the field identification card, which he claims was intentionally or negligently withheld from him, was exculpatory in character. To support this claim, the plaintiff presents declarations of John Yzurdiaga, the attorney who represented Cooks at the fifth trial, David Johnston, a newspaper reporter who calls himself an authority in investigative reporting, Stanley Jacobs, an attorney who deposed the investigating officer in the criminal case, and three of the twelve jurors who acquitted Cooks in the fifth trial. The declarations of Yzurdiaga, Johnston and Jacobs are biased and conclusory in nature and present no helpful evidence that would tend to prove that the field card was exculpatory in any sense of the word. The declarations of the three jurors will be discussed in a later portion of this memorandum.

To exculpate is "to free from blame; declare or prove guiltless."[1] As this court understands police procedures in the investigation of a crime, officers who make the first response to the crime scene are instructed to be alert to the presence of anybody who is reasonably near the crime scene, and whose mere presence there might either suggest that he could be a suspect or that he might have seen something that would help the officers identify the perpetrators of the crime. It is not clear from the evidence just how long a period of time passed between the time of the commission of this offense and the time that the first officer responding arrived and began searching for witnesses or suspects. One of the persons who happened to be within two blocks of the crime scene at whatever time the officers responded was Douglas Henderson. One of the investigating officers stopped him and interviewed him as to what he may have seen or heard that was connected with the crime. That officer later testified that he saw nothing about the mere presence of Henderson near the scene, or from the conversation with Henderson that caused him to focus on Henderson as a suspect.

No witness that was interviewed the night of the crime or who has been interviewed since the night of the crime has ever pointed to Henderson as being a suspect. The witness Foster has stated definitely that Henderson was not one of the three culprits that she saw that evening.

The field interview card prepared the evening of the crime contained nothing

1. Webster's New World Dictionary, College Edition.

more than Henderson's name, address and a cursory identification of him. There is nothing whatsoever contained within the four corners of this document which in and of itself would lead an investigating officer to conclude that Henderson was a suspect, or that Henderson could provide information concerning the crime that would be helpful to Tony Cooks. There was nothing about the content of this card that reasonably led any gatherer of evidence to feel that it had any importance other than the fact that this person was interviewed the night of the offense, but gave no helpful information. I, therefore, find that the card was not material evidence which could reasonably suggest Cooks' innocence, and that there was nothing within the four corners of the card that should trigger any investigator to conclude that because of its existence, it should be produced to the defendant with other discovery material.

Under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the prosecutor has an obligation to turn over exculpatory evidence, not merely evidence which the defense asserts is helpful to his case. Relying on *Brady*, the Court in *U.S. v. Bagley*, 473 U.S. 667, 675, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985), stated: "Thus the prosecutor is not required to deliver his entire file to defense counsel, only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."

Recently the Ninth Circuit, in *U.S. v. Kennedy*, 869 F.2d 1336 (9th Cir.1989), analyzed possible *Brady* material consisting of a forensic pathologist's letter tending to exculpate the defendant who had been convicted of rape and felony murder. In determining whether the letter should have been given to the defense by the prosecution, the court discussed (1) the materiality of the letter itself as evidence, and, (2) pursuant to *Bagley*, 473 U.S. at 683, 105 S.Ct. at 3384, the probable effect the letter would have had on the defense's preparation or presentation of the defendant's case. *Kennedy*, at 1339. Under both modes of analysis, the letter was found not to be *Brady* material. *Kennedy*, at 1341.

The Ninth Circuit's bifurcated analysis in *Kennedy* of a withheld document as possible *Brady* material, may be utilized in the instant matter. First, as discussed in detail above, the court finds in this case, that the field card itself is not material evidence that might reasonably have altered the earlier trials.

In *Kennedy*, the circuit court discussed, secondly, the probable testimony elicited from a possible witness identified by the withheld document. Here, however, no equivalent witness of importance could be inferred from the field card itself. As stated above, field cards were filed on all passersby in the area. A reasonable investigator reviewing the cards would not have called upon Henderson, specifically, or other witnesses of significance to testify in this matter. As such, the field card, if it had been produced initially, would have had a negligible effect on the defense's preparation and presentation of Tony Cooks' case.

## JURORS' DECLARATIONS

█ In his brief, in opposition to this motion, Cooks also depends upon the declarations of three of the twelve jurors in the fifth trial as some evidence of the fact that if the field card had been produced to Cooks prior to the fifth trial, he would have been acquitted earlier. These three declarations are so suspiciously similar in content as to make one wonder who was the author of the message. However, Federal Evidence Code Rule 606(b) precludes the consideration of such an affidavit in this case and in opposition to this motion. *See United States v. Conover*, 772 F.2d 765, 770 (11th Cir.1985). In conclusion, the advisory committee on the proposed rule 606(b), aptly summed up the rationale for excluding such juror affidavits or testimony by stating:

"The mental operations and emotional remarks of jurors in arriving at a given result would, if allowed, as a subject of inquiry, place every verdict at the mercy of jurors and invite tampering and harrassment." Note of Advisory Committee on Proposed Rules, F.R.E. 606(b).

*See also, U.S.A. v. Falsia,* 724 F.2d 1339, 1343 (9th Cir.1983). (No error in excluding three jurors' statements, on motion for new trial, indicating that lack of co-defendant influenced their decisions to convict).

### CONSPIRACY

The plaintiff in the instant case alleges that the prosecution's failure to produce the field card prior to the fifth trial was due to an intentional conspiracy on the part of law enforcement officers. No evidence has been produced supporting the mere allegation that persons conspired to deprive Cooks of this evidence, and this bland accusation must be and is rejected.

■ Cooks makes the further accusation that if the failure to produce the card was not intentional, it was the product of negligence on the part of the investigating officers who claimed that the card was mislaid between papers in the crime file, and that it did not surface until after the fourth trial. It is of some importance to note that when the card came to the attention of law enforcement officers, it was promptly produced to Cooks' attorney. Even when it was produced, Cooks failed to show that its production led to the discovery of any evidence which would tend to acquit Cooks, or that it produced any witnesses who accused Henderson of being one of the three thugs.

If it could be said that the officers were negligent in mislaying the card, and thus delaying its production to Cooks, such negligence cannot legally support a cause of action under section 1983. It is well settled that section 1983 "imposes liability for violation of rights protected by the Constitution, not for violations of duties of care arriving out of tort law." *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2965, 61 L.Ed.2d 433 (1979) cited in *Johnson v. Barker,* 799 F.2d 1396, 1399 (9th Cir.1986); *see also, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

Finally, Cooks levels scatter-gun charges of faulty photograph lineups and inadequate training of investigating officers against these defendants, but such charges are of the nature that should have been the subject of pre-trial motions in the criminal case, and should not be accepted as supportive of any claim in this section 1983 action. *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

### SPOLIATION OF EVIDENCE

■ The cause of action for spoliation of evidence is rejected because there is no evidence that the field card was destroyed or concealed. *Smith v. Superior Court,* 151 Cal.App.3d 491, 494, 198 Cal.Rptr. 829 (1984). Furthermore, since no bad faith is evidenced on the part of the police involved, they had no duty to discover exculpatory evidence during the course of their investigation. *Miller v. Vasquez,* 868 F.2d 1116, 1119–1120 (9th Cir.1989).

### ORDER

IT IS HEREBY ORDERED that defendants' motion for summary judgment be granted.

IT IS FURTHER ORDERED that the Clerk of this court enter a final judgment upon the order herein dismissing with prejudice all of plaintiff's claims before this court.