[No. H035083. Sixth Dist. Apr. 29, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNEST JACINTO VELASCO, Defendant and Appellant.

COUNSEL

Christine J. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**DUFFY, J.**—Defendant Ernest Jacinto Velasco appeals from a judgment of conviction entered on a jury verdict. The jury convicted him of possessing a shank in prison. On appeal, defendant claims that the state violated his constitutional rights when prison guards failed to gather and thereafter preserve other evidence they noticed when they found the shank.

We will affirm the judgment.

## PROCEDURAL BACKGROUND AND FACTS

### I. *Procedural Background*

A jury convicted defendant of one count of possessing a weapon while in penal custody. (Pen. Code, § 4502, subd. (a).) The jury found true two allegations that he had two prior convictions within the meaning of the "Three Strikes" law. (*Id.*, §§ 667, subds. (b)–(i), 1170.12, subd. (c)(2).) The trial court sentenced him to a prison term of 25 years to life, to be served consecutive to the terms he was already serving for convictions of attempting to murder two peace officers and inflicting great bodily injury on one of them.

### II. *Facts*

#### A. *Prosecution Case*

Defendant is an inmate at the Salinas Valley State Prison in Soledad and is subject to a protocol that stops inmates from entering the recreation yard until correctional officers have screened them for weapons. Inmates wear only boxer shorts and undershirts during the inspection procedure. Officers inspect their outer clothing, which the inmates carry, and return it to them. Next, the inmates undergo weapons screening, a test that consists of an officer's search

of their person with a hand-held metal detector. After passing that inspection, the inmates may enter the yard and don their outer clothing.

On November 26, 2008, Correctional Officer Frank Colburn screened defendant for weapons as defendant prepared, in his minimal dress, to enter the recreation yard. The metal detector detected an object. Officer Colburn and a correctional officer named Sandquist patted defendant down. Officer Colburn felt "a foreign object in the front of his boxer shorts." He handcuffed defendant, escorted him away, and radioed Sergeant Mike Kircher.

When Sergeant Kircher arrived at the location to which Officer Colburn had escorted defendant, Officer Colburn explained the circumstances and Sergeant Kircher asked defendant what his shorts contained. Defendant replied, "It's a weapon." Sergeant Kircher directed Officer Colburn to extract the item, an "inmate-manufactured stabbing device," namely a sharp and pointed shank that appeared to be steel.

The shorts had been modified, evidently to accommodate the shank. Officer Colburn discovered that defendant's boxer shorts "had an inmate-manufactured pocket sewn in the front behind the fly on the interior of the shorts." This pocket was open at the top for ease of access to the weapon.

It appears that prison personnel let defendant continue to wear his shorts. They did not preserve the shorts as evidence, nor did they photograph them.

B. *Defense Case*

Defendant presented no evidence and relied on defense counsel's cross-examinations of prosecution witnesses.

DISCUSSION

Defendant claims that his conviction was made possible by the state's failure to gather and preserve evidence, and that the due process clause of the Fourteenth Amendment to the United States Constitution requires that his conviction be reversed. (See *Arizona v. Youngblood* (1988) 488 U.S. 51, 57–58 [102 L.Ed.2d 281, 109 S.Ct. 333] (*Youngblood*); *California v. Trombetta* (1984) 467 U.S. 479, 488–489 [81 L.Ed.2d 413, 104 S.Ct. 2528] (*Trombetta*).) For brevity, we will refer to claims and motions based on alleged failures to gather and/or preserve evidence as *Trombetta* claims and motions.

Before trial began, defendant filed a motion to dismiss the case on the ground that prison authorities violated his due process rights by failing to preserve the modified boxer shorts. The prosecution opposed the *Trombetta*

motion and the trial court denied it. The court stated, "I don't think that there's anything that's obviously exculpatory about the boxers," i.e., the boxer shorts.

The standard of review of a trial court's determination that evidence is or is not sufficiently exculpatory under *Trombetta* and *Youngblood* is unsettled, and it may depend on the extent of the inquiry a court takes before ruling on a *Trombetta* motion. There was no evidentiary hearing on defendant's *Trombetta* motion. The trial court relied exclusively on the parties' written submissions.

The applicable standard of review appears to us rarely to have been considered in appellate decisions. It is settled that the substantial evidence standard applies to a trial court's determination, following a factual inquiry, that the state acted in good or bad faith in failing to preserve evidence. (*People v. Memro* (1995) 11 Cal.4th 786, 831 [47 Cal.Rptr.2d 219, 905 P.2d 1305].) Beyond that, the matter seems to be unresolved nationwide. (Compare *State v. Leonard* (2005) 217 W.Va. 603, 609–610 [619 S.E.2d 116, 122–123] [clearly erroneous standard of review applies to trial court's factual findings after it conducts an evidentiary hearing on a *Trombetta* motion (see *State v. Osakalumi* (1995) 194 W.Va. 758 [461 S.E.2d 504])] with *U.S. v. Cooper* (9th Cir. 1993) 983 F.2d 928, 930, 931 [applying de novo standard of review although a factual inquiry took place] and *State v. Burden* (2001) 104 Wn.App. 507, 512 [17 P.3d 1211, 1214] [applying de novo standard of review, but it is unclear whether a factual inquiry took place].)

We need not resolve this threshold consideration here, however, because under any standard of review defendant's *Trombetta* claim fails.

■ Under *Trombetta* and *Youngblood*, "Law enforcement agencies must preserve evidence only if it possesses exculpatory value 'apparent before [it] was destroyed,' and not obtainable 'by other reasonably available means.' [Citations.] The state's responsibility is further limited when the defendant challenges the failure to preserve evidence 'of which no more can be said than that it could have been subjected to tests' that might have helped the defense. [Citation.] In such a case, unless the defendant can show 'bad faith' by the police, failure to preserve 'potentially useful evidence' does not violate his due process rights." (*People v. DePriest* (2007) 42 Cal.4th 1, 41–42 [63 Cal.Rptr.3d 896, 163 P.3d 896].)

Before we discuss the nature of the evidence, we must consider the circumstance that the correctional authorities did not retain defendant's boxer shorts. Defendant's trial counsel tacitly acknowledged this circumstance in defendant's written motion to dismiss the case because of the perceived

*Trombetta* violation: in Officer "Colburn's report, there was no mention of the boxer shorts being booked in to evidence." On appeal, defendant insists that the prison authorities intentionally destroyed the shorts, but there is no evidence of that in the record—indeed, there is no evidence that the prison guards took the shorts from defendant's person. Defendant himself notes in his appellate briefs that Officer "Colburn did not place the shorts . . . into evidence" and that it could not be "determined what happened to the evidence." The record leads us to conclude that prison investigators let defendant continue to wear his shorts, which were not dangerous in themselves, and do with them what he wished. As the People observe in their brief on appeal, "the prosecution essentially conceded that the correctional officers failed to recover the boxer shorts as evidence."

In such circumstances, we doubt that any due process violation can occur. "Due process requires the state preserve evidence *in its possession* where it is reasonable to expect the evidence would play a significant role in the defense." (*People v. Alexander* (2010) 49 Cal.4th 846, 878 [113 Cal.Rptr.3d 190, 235 P.3d 873], italics added.) There is no evidence that the state ever possessed the shorts. It is axiomatic that the constitutional due process guaranty is a bulwark against improper state action. "[T]he core purpose of procedural due process [is] ensuring that a citizen's reasonable reliance is not frustrated by arbitrary government action." (*Castle Rock v. Gonzales* (2005) 545 U.S. 748, 791, fn. 20 [162 L.Ed.2d 658, 125 S.Ct. 2796] (dis. opn. of Stevens, J.).) If the state took no action, due process is not a consideration, because there is no "loss of evidence attributable to the Government." (*Youngblood, supra,* 488 U.S. at p. 57.) The state "might transgress constitutional limitations if it exercised its sovereign powers so as to hamper a criminal defendant's preparation for trial." (*Trombetta, supra,* 467 U.S. at p. 486.) When, however, defendants are allowed to keep the evidence for themselves, there is no exercise of any sovereign power and no due process violation.

A contrary rule would make the state a caretaker for defendants' exculpatory evidence even though the state did not control or possess the evidence. Such a rule would make no sense. Defendant implies on appeal that because he is a prisoner whose life is controlled in almost every aspect by prison guards and prison rules, the state is a de facto custodian of the shorts even if prison guards never obtained them. But absent confiscation of them, the argument is unpersuasive. Everything in the record points to defendant's continued retention of the shorts that he asserts might constitute exculpatory evidence. The state has not stopped him from using them to exculpate himself if they are exculpatory.

We recognize that the United States Court of Appeals for the Ninth Circuit has adopted a rule that the state has a duty not only to preserve evidence of

certain exculpatory value but to gather it in the first place. That court has "made it abundantly clear that due process requires law enforcement not just to preserve evidence already in hand, but to gather and to collect evidence in 'those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.'" (*Northern Mariana Islands v. Bowie* (9th Cir. 2001) 243 F.3d 1109, 1117, quoting *Miller v. Vasquez* (9th Cir. 1989) 868 F.2d 1116, 1121 (*Miller*).)

The *Miller* rule, i.e., the Ninth Circuit's conclusion that "a bad faith failure to collect potentially exculpatory evidence would violate the due process clause" (*Miller, supra,* 868 F.2d at p. 1120), has been criticized elsewhere. "This decision," said a United States District Court decision, "is an aberration." (*White v. Tamlyn* (E.D.Mich. 1997) 961 F.Supp. 1047, 1062, fn. 12.)

*White* cited *Kompare v. Stein* (7th Cir. 1986) 801 F.2d 883, which rejected a claim that authorities had a duty to examine autopsy slides of Mrs. Kompare's young son with sufficient thoroughness to find they contained exculpatory evidence before prosecuting her for manslaughter in the Illinois criminal courts. (See *id.* at pp. 885–886.) "[T]he plaintiffs," said the Seventh Circuit, "are essentially arguing that the defendant failed to investigate thoroughly [the son's] death and failed to reveal exculpatory information" (*id.* at pp. 888–889) and "are attempting to impose . . . a duty to investigate or to investigate thoroughly" (*id.* at p. 890). The plaintiffs, however, had "failed to cite any case imposing a duty to investigate on either a coroner or a policeman. In fact, the law appears to be just the opposite, i.e., that the police (and, presumably, the coroner) have no constitutional duty to keep investigating a crime once they have established probable cause. [Citations.] Therefore, [there was] no clearly established constitutional duty to investigate [the son's] death or to do so thoroughly." (*Ibid.,* italics omitted.)

In a similar vein, our Supreme Court has said, "the Constitution does not require the prosecution to make a complete and detailed accounting to the defendant of all police investigatory work on a case." (*People v. Nation* (1980) 26 Cal.3d 169, 175 [161 Cal.Rptr. 299, 604 P.2d 1051].)

Nonetheless, the criticism of *Miller* in *White v. Tamlyn, supra,* 961 F.Supp. 1047, may be based on a misunderstanding of *Miller. Miller* did not impose a due process requirement to gather all possible relevant evidence. "We are not persuaded by Miller's argument that *Trombetta* imposes upon police a duty to obtain evidence. The Supreme Court in *Trombetta* was confronted with a situation in which the police had obtained but failed to preserve breath samples. The Court held that the government may have a duty to *preserve* evidence after the evidence is gathered and in possession of the police. [Citations.] *Trombetta* did not impose a duty to *obtain* evidence." (*Miller,*

*supra*, 868 F.2d at p. 1119.) *Miller* held only that "a *bad faith* failure to collect potentially exculpatory evidence would violate the due process clause." (*Id.* at p. 1120, italics added.) If police officers saw exculpatory evidence but deliberately ignored it and left it in place so that it would not hamper a later prosecution, failing not only to preserve it but even to obtain it, that could violate a criminal defendant's due process rights. If "the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant" (*Youngblood, supra*, 488 U.S. at p. 58) and fail to preserve it, that shows "bad faith on the part of the police" (*ibid.*) that violates the due process clause of the Fourteenth Amendment. *Miller* seems to us to extend logically from *Youngblood* to cases in which police see that evidence is likely to be exculpatory but avoid collecting it because of that perception.

Such is not the case here, however. Indeed, *Miller* is inapposite to this case. *Miller* implicitly concluded that the items of evidence the police failed to obtain in that case—a jacket stained with the victim's or the defendant's blood and photographs of defensive wounds on the defendant's arms (*Miller, supra*, 868 F.2d at p. 1117)—had a potentially exculpatory value (*id.* at p. 1121). *Miller* seemed to overlook the threshold question whether these items could be anything but inculpatory. We need not belabor the point by further commenting on *Miller*. Suffice it to say that, unlike the Ninth Circuit's implicit characterization of the facts in *Miller*, there could be nothing exculpatory about defendant's boxer shorts. In their modified form, they could only buttress the case against him. The correctional officers had no due process requirement "to keep investigating a crime once they have established probable cause." (*Kompare v. Stein, supra*, 801 F.2d at p. 890; see *People v. Nation, supra*, 26 Cal.3d at p. 175.) They could let defendant walk away with his shorts if they concluded that they had enough evidence to implicate him in the crime of carrying a weapon in prison.

Defendant argues that the boxer shorts may have contained no custom-sewn holsterlike modification that would permit easy access to the shank. In such a case, he asserts, the shorts would have an exculpatory value because they would expose prosecution testimony regarding the shorts as false and cast the entire case into doubt.

Defendant is correct that if "the defendant can show 'bad faith' by the police, failure to preserve 'potentially useful evidence' " (*People v. DePriest, supra*, 42 Cal.4th at p. 42) may, depending on the circumstances, violate his due process rights (see *ibid.*)—i.e., the evidence need be only potentially useful. Our Supreme Court has, however, rejected as speculative contentions similar to defendant's.

In *People v. Alexander, supra,* 49 Cal.4th 846, the defendant filed a motion to dismiss based on police failure to preserve a tape recording of an attempted hypnosis session, original composite drawings by a police sketch artist, and blood test swabs. (*Id.* at p. 877.) The court rejected the defendant's assertions that these items could have exculpatory value as speculative. The defendant's "claim that the erased audiotape had exculpatory value is based on speculation that something on it would have contradicted the evidence and testimony tending to show that [the subject] was not hypnotized. Similarly, any supposed exculpatory value lost by the failure to preserve the original composite drawings is based on speculation that [a] mustache was added later, despite the fact that the evidence before the trial court, including testimony of the percipient witnesses, contradicted that claim. [The witness] at all times described the shotgun-wielding suspect as having a mustache and attributed the differences in the copies defense counsel showed him to poor photocopying. [The witness's] testimony is consistent with the sketch artist's explanation of his procedures . . . . Finally, as the trial court noted, the only evidence in the record was that the presumptive blood tests were inculpatory. Defendant speculates that the swabs and photographs of the results might have contradicted what the analyst reported, but he has not shown failure to preserve the test results, to the extent possible, resulted in destruction of exculpatory evidence." (*Id.* at pp. 878–879.)

Likewise, in *People v. Cook* (2007) 40 Cal.4th 1334 [58 Cal.Rptr.3d 340, 157 P.3d 950], the court rejected a *Trombetta* claim by noting that the defendant "speculates that he might have discovered items linking other persons to . . . bloodstained shoes" in a trash bag that the police failed to preserve, but "failed to show the trash bag actually contained possibly exculpatory evidence . . . ." (*Id.* at p. 1349; see also *id.* at p. 1351 [rejecting another *Trombetta*-based argument as based on speculation].)

In light of *Alexander* and *Cook,* the speculation that accompanies defendant's *Trombetta* claim is unavailing.

Finally, defendant argues that the admission of testimony regarding unpreserved evidence violates public policy and that for "this reason alone, the judgment should be set aside." The People argue in turn that defendant has forfeited this claim by failing to raise it in the trial court. In our view, defendant's *Trombetta* motion sufficiently comprehends this argument for us to entertain it on the merits. It is, however, without merit in the circumstances of this case. Defendant kept the shorts, the state never confiscated them, and nothing in the record suggests that the prison guards ignored the shorts because they perceived they would likely be exculpatory. All of the evidence is that they were inculpatory. No useful purpose would be served by imposing on the state the duty defendant urges in these circumstances.

In sum, defendant's *Trombetta* claim is without merit.

## DISPOSITION

The judgment is affirmed.

Rushing, P. J., and Premo, J., concurred.

A petition for a rehearing was denied May 25, 2011, and appellant's petition for review by the Supreme Court was denied August 17, 2011, S193862.