Filed 12/10/24  P. v. Wiseman CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082926 |
| v. | (Super. Ct. No. 23PA001268) |
| CHESTER RAY WISEMAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Enrique Guerrero, Judge.  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

The trial court rejected defendant and appellant Chester Ray Wiseman's claim that the prosecution had improperly destroyed potentially exculpatory evidence, and found true that defendant had violated his parole conditions by being in possession of two knives. The court thereafter revoked defendant's parole and sentenced him to 180 days in county jail. On appeal, defendant contends the trial court erred in denying his claim that the prosecution had destroyed the surveillance video, and thus the order revoking his parole should be reversed. We disagree and affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 17, 2023, B.C. and J.C., both parole agents, contacted defendant, a parolee, at defendant's cardboard, fully enclosed homeless encampment behind the state parole office in Victorville. They contacted defendant because his encampment was blocking the back door. When he was released from prison, defendant had signed and indicated he understood the terms and conditions of his parole. Among other terms and conditions of parole, one of defendant's parole conditions prohibited him from possessing any knife with a blade longer than two inches, except for kitchen knives kept in the kitchen and knives related to employment.

2

B.C. and J.C. searched defendant's encampment and found two knives exceeding the two-inch limit—a kitchen knife and a folding, pocket-style knife. The kitchen knife had a six-inch blade and the folding knife had about a four-inch blade. The kitchen knife was in a crate that defendant had covered with his clothes and was using to brace one of the cardboard walls of his encampment. The folding knife was in a backpack that also contained defendant's state identification card and social security card. Prior to the search, defendant had stated to parole agents B.C. and J.C. that everything at the encampment belonged to him "except for the two backpacks." However, when the agents found defendant's identification and social security cards in the backpack, he admitted that it belonged to him.

On October 23, 2023, a petition was filed to revoke defendant's parole. The petition alleged that defendant had violated the parole condition prohibiting him from possessing a knife with a blade exceeding two inches.

On November 1, 2023, after defendant waived his right to counsel and self-representation, the trial court informed defendant that his former counsel would provide him with the discovery materials in the case, and to let the court know if he had any discovery-related inquiries.

On December 5, 2023, defendant advised the court that he had intended to subpoena an allegedly exculpatory surveillance videotape that had captured the search of his encampment but had been unable to do so because the court had not "provided [him] with a runner." The People noted that they had learned there was an outside surveillance

3

video that "would have recorded the incident," and agreed to try to retrieve the videotape for disclosure to defendant. The trial court set a discovery hearing for December 12, 2023, and the parole violation hearing for December 19, 2023.

At the December 12, 2023 hearing, the prosecutor informed defendant and the trial court that any surveillance video that may have captured the search no longer existed because of the parole office's 30-day retention policy.

On December 19, 2023, defendant made a motion to dismiss for failure to disclose and/or destroying allegedly exculpatory evidence. In his motion, defendant claimed that during the search of his camp enclosure, parole agent B.C.—incorrectly identified by defendant as agent "Adams"—had dropped the two knives, wrapped in a towel, in the enclosure. He also alleged that a "parole unit supervisor," K.R., was in the enclosure when this occurred. Defendant believed that the now-destroyed surveillance videotape had captured this allegedly exculpatory evidence of the agents planting the knives in his enclosure and that the destruction of the videotape, therefore, required dismissal of his parole revocation petition.

At the parole violation hearing held that same day, the trial court noted it would deem defendant's motion to dismiss a *Trombetta*[1] motion. Agents B.C. and J.C. both testified and were cross-examined by defendant. As previously noted, both agents testified that they had executed a search of defendant's encampment and found a six-inch kitchen knife in a milk crate that defendant had covered with his clothes and was using to

---

[1] *Trombetta v. California* (1984) 467 U.S. 479 (*Trombetta*).

4

buttress one of his cardboard encampment side walls from the outside, and a four-inch folding knife in defendant's backpack that also contained his personal identifying information. Agent J.C. also testified that the search was initially conducted outside of defendant's encampment, but was broadened to include the inside area after the kitchen knife was found in the milk crate.

On cross examination, defendant asked Agent B.C. whether, during the search, he had thrown "a cloth with something wrapped inside" beside defendant and asked him whether those items belonged to defendant. Agent B.C. responded, "I don't recall." He reiterated that the kitchen knife had been found inside a milk crate outside of the encampment itself.

Defendant did not present any evidence at the hearing to support his *Trombetta* motion. Defendant argued that the court should dismiss the parole violation petition because agent "Adams" had dropped a knife wrapped in a towel outside his enclosure near him and supervisor "Keith Reed" had placed one knife in his backpack located inside his enclosure and that "security cameras could have shown" the agents' actions. The prosecutor argued that (1) based on agents B.C. and J.C.'s testimony at the hearing and defendant's failure to present contrary evidence, any surveillance video would have been inculpatory, not exculpatory, and (2) the videotape was not destroyed in bad faith, but pursuant to the parole office's 30-day retention policy.

The trial court denied defendant's *Trombetta* motion, finding defendant had "failed to show that any video or audio in this would have contained exculpatory value and that there was no other means for him to obtain comparable evidence." The court further stated that defendant "was not denied his right [to] cross-examine either of the witnesses who performed the search today" and that defendant had failed to show "bad faith on part of the parole agents or the parole department." The court thereafter found defendant violated the terms of his parole and ordered defendant to serve 180 days in jail with credit for 129 days. Defendant timely appealed.

III.

DISCUSSION

Defendant contends the failure to preserve the video clips from the parole office's surveillance system violated his due process rights under *Trombetta*, *supra*, 467 U.S. 479 and *Arizona v. Youngblood* (1988) 488 U.S. 51 (*Youngblood*), and thus the trial court erred when it denied his motion to dismiss the parole violation petition on those grounds. We disagree.

"The federal constitutional guarantee of due process imposes a duty on the state to preserve 'evidence that might be expected to play a significant role in the suspect's defense.'" (*People v. Montes* (2014) 58 Cal.4th 809, 837.) Whether the loss of evidence rises to the level of a due process violation is governed by the principles set forth by the United States Supreme Court in *Trombetta* and *Youngblood*. (*People v. Alvarez* (2014) 229 Cal.App.4th 761, 771.) Under *Trombetta*, law enforcement agencies must preserve

6

evidence only if the evidence possesses exculpatory value that was apparent before it was destroyed and if the evidence is of a type not obtainable by other reasonably available means. (*People v. Velasco* (2011) 194 Cal.App.4th 1258, 1262; *Trombetta*, *supra*, 467 U.S. at pp. 488-489.) As an alternative to establishing the apparent exculpatory value of the lost evidence, *Youngblood* provides that a defendant may show that """"potentially useful"""" evidence was destroyed as a result of bad faith. (*People v. Velasco*, *supra*, at p. 1262; see *Youngblood*, *supra*, 488 U.S. at p. 58.)

However, there are "no cases of precedential value which squarely hold that the prosecution's duty to preserve material evidence encompasses an initial duty to affirmatively collect or gather or seize potentially material evidence in the course of an investigation for defendant's use." (*People v. Bradley* (1984) 159 Cal.App.3d 399, 406.) "It is axiomatic that the constitutional due process guaranty is a bulwark against improper state action. '[T]he core purpose of procedural due process [is] ensuring that a citizen's reasonable reliance is not frustrated by arbitrary government action.' [Citation.] If the state took no action, due process is not a consideration, because there is no 'loss of evidence attributable to the Government.'" (*People v. Velasco*, *supra*, 194 Cal.App.4th at p. 1263.) Thus, the California Supreme Court and Courts of Appeal have repeatedly recognized that "due process does not require the police to collect particular items of evidence." (*People v. Montes*, *supra*, 58 Cal.4th at p. 837 [no duty to collect blood samples]; *People v. Velasco*, *supra*, at p. 1263 [no duty to preserve prison clothing modified to conceal weapon]; *People v. Mills* (1985) 164 Cal.App.3d 652, 656 [no duty

7

to collect breath samples]; *People v. Kelley* (1984) 158 Cal.App.3d 1085, 1101-1102 [no duty to tape-record confession].)

Here, the People acknowledged "that there was a video surveillance camera outside of the probation [*sic*] office that might have captured the incident," but "the retention period for this video is 30 days" and is deleted pursuant to the parole office's policy.

"We review the trial court's decision on a *Trombetta*/*Youngblood* motion under the substantial evidence standard." (*People v. Alvarez*, *supra*, 229 Cal.App.4th at p. 774; see *People v. Carter* (2005) 36 Cal.4th 1215, 1246.) Our task "'is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value' in support of the court's decision." (*People v. Alvarez*, *supra*, at p. 774.)

Here, defendant argues that the surveillance video had exculpatory value because it could show the agents planting the knives in his encampment. However, the agents testified that they found one six-inch knife in a milk crate outside defendant's encampment and one four-inch folding knife inside his backpack, and the trial court found this testimony credible. The agents' testimonies constitute substantial evidence in support of the trial court's determination that the video clips did not contain exculpatory evidence. Moreover, defendant had the opportunity to cross-examine the agents and testify for himself if he chose to do so.

The California Supreme Court's decision in *People v. Thomas* (2012) 54 Cal.4th 908 is instructive. That case involved the failure of police to tape-record the entirety of an interview conducted with the defendant in that case. (*Id*. at pp. 918-919, 928.) In rejecting the defendant's claim of a *Trombetta* violation, our Supreme Court explained: "[T]he absence of a tape recording of the entire interview did not deny defendant all opportunity 'to obtain comparable evidence by other reasonably available means'" because "[d]efendant was able to cross-examine [the interviewing detective] at trial, and defendant himself was available to testify regarding the interview if he chose to do so." (*People v. Thomas*, *supra*, at p. 929.) The same reasoning would apply here.

Defendant also argues that the agents' failure to retain the surveillance video constituted bad faith because the People were "dilatory in acting to preserve it." However, as the prosecutor explained, the videotapes were not destroyed in bad faith but pursuant to a parole office policy. Defendant has not shown otherwise. Where substantial evidence supports the trial court's determination that the agents or parole department did not act in bad faith and that the lost evidence did not have apparent exculpatory value, defendant has not shown a violation of his due process rights under *Trombetta* or *Youngblood*. We find no error and affirm the trial court's order in this regard.

IV.

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MENETREZ
J.