Terry Leroy ABELL,
Petitioner-Appellant,

v.

Robert R. RAINES, Respondent-Appellee.

No. 80–5128.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1980.

Decided March 30, 1981.

Terry L. Abell, pro se.

Bruce M. Ferg, Phoenix, Ariz., for respondent-appellee.

Before KILKENNY and CHOY, Circuit Judges, and GRANT, District Judge.*

KILKENNY, Circuit Judge:

Appellant appeals from the dismissal of a habeas corpus action. He was convicted after a jury trial in the Arizona state courts of possession of obscene materials with intent to sell and of lewd and lascivious acts. Prior to the institution of habeas proceedings in the district court, appellant unsuccessfully appealed to the Court of Appeals

---

* The Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, sitting by designation.

of the State of Arizona and the Supreme Court of that state. Additionally, appellant exhausted his state remedies by seeking post-conviction relief. Appellant's contentions center on the allegedly unconstitutional search and seizure of admittedly obscene materials. The district judge concluded that "Petitioner was provided an opportunity for full and fair litigation of these Fourth Amendment claims in the state courts. Therefore, the relief requested in the present petition for writ of habeas corpus must be denied. *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, [49 L.Ed.2d 1067] (1976)." We affirm.

## APPELLANT'S CONTENTIONS

Appellant contends:

(1) that the process by which the search warrant was issued was insufficient to satisfy constitutional requirements. Specifically, appellant alleges that the affidavit which supported issuance of the search warrant simply contained conclusory statements that the materials were obscene. Therefore, the affidavit allegedly lacked sufficient detail to permit the magistrate to focus searchingly on the question of obscenity.

(2) that the search warrant, which authorized the seizure of an unknown number of obscene adult photographs, was constitutionally deficient because it gave unrestricted discretion to the police officer to seize the photos he determined were obscene. The warrant, in appellant's estimation, did not describe with particularity the things to be seized.

(3) that the search warrant authorizing the seizure of photos depicting nude children was constitutionally deficient.

Appellant maintains that *Stone v. Powell* does not preclude federal court consideration of these issues because they involve First Amendment, and not Fourth Amendment, issues.

## ISSUES

We state the issues as follows:

I. Whether *Stone v. Powell* is applicable to the issues presented.

II. Whether, if *Stone v. Powell* is applicable, appellant received a full and fair opportunity to litigate his contentions in the state courts, thereby precluding federal court review.

## DISCUSSION

## I. APPLICABILITY OF STONE V. POWELL.

In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court, per Justice Powell, stated "we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494, 96 S.Ct. at 3052 (footnotes omitted) Appellant, relying upon *Marcus v. Search Warrant,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961) and *A Quantity of Books v. Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and their progeny, asserts that *Stone v. Powell* is not applicable because the issues involved are First, not Fourth, Amendment claims. We disagree.

In *Marcus,* the Court found that Missouri's procedures authorizing the search for and seizure of allegedly obscene publications were constitutionally deficient. The Court stated that

"The authority to the police officers under the warrants issued in this case, broadly to seize 'obscene . . . publications,' poses problems not raised by the warrants to seize 'gambling implements' and 'all intoxicating liquors' involved in the cases cited by the Missouri Supreme Court. . . . For the use of these warrants implicates questions whether the procedures leading to their issuance and surrounding their execution were adequate to avoid suppression of constitutionally protected publication. '. . . [T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or pun-

ished is finely drawn. ... The separation of legitimate from illegitimate speech calls for ... sensitive tools. ...' ... It follows that, under the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity as here involved without regard to the possible consequences for constitutionally protected speech." *Id.* at 731, 81 S.Ct. at 1715 (citations omitted).

The Court concluded that "Since a violation of the Fourteenth Amendment infected the proceedings, in order to vindicate appellants' constitutional rights the judgment [sustaining the condemnation of 100 publications as obscene] is reversed." *Id.* at 738, 81 S.Ct. at 1719. Justice Black, in an opinion concurred in by Justice Douglas, wrote separately to state his view that "Since the State has used a general warrant in this case in violation of the prohibitions of the Fourth and Fourteenth Amendments, I concur in reversal of the judgment." *Id.* at 739, 81 S.Ct. at 1720. (Black, J., concurring). This seems to indicate that it was the First Amendment, as made applicable to the states by the Fourteenth, that provided the basis for the majority's rationale.

In *A Quantity of Books*, the Court concluded that the procedures followed in issuing and executing the warrant of seizure of a large quantity of allegedly obscene books from the place of business of P–K News Service were constitutionally deficient. The Court emphasized that because the warrant authorized the sheriff to seize *all* copies of the books in question and P–K was not afforded a hearing on the obscenity issue before the warrant issued the procedures lacked the safeguards necessary to prevent suppression of non-obscene publications protected by the Constitution. The Court found it unnecessary to rule on P–K's assertion that its constitutional right against unreasonable searches and seizures had been violated.

In *Lee Art Theatre v. Virginia*, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), a conviction for possessing and exhibiting lewd and obscene motion pictures was re-

versed because the films had been unconstitutionally seized.

"The procedure under which the warrant issued solely upon the conclusory assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer's conclusions was not a procedure 'designed to focus searchingly on the question of obscenity,' *id.*, at 732, 81 S.Ct. at 1716, and therefore fell short of constitutional requirements demanding necessary sensitivity to freedom of expression." *Id.* at 637, 88 S.Ct. at 2104.

 These cases emphasize that the procedures followed in issuing and executing search warrants for materials that arguably fall within First Amendment protection must reflect the "necessary sensitivity to freedom of expression." *Id.* They do not, however, support appellant's assertion that his petition does not involve Fourth Amendment issues. Although we recognize that First Amendment values are at stake, appellant's allegation that evidence admitted against him should have been suppressed is a *Fourth* Amendment claim, rather than a First. As the Court stated in *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973),

"The common thread of *Marcus, A Quantity of Books* and *Lee Art Theatre* is to be found in the nature of the materials seized and the setting in which they were taken. ... In each case the material seized fell arguably within First Amendment protection, and the taking brought to an abrupt halt an orderly and presumptively legitimate distribution or exhibition. Seizing a film then being exhibited to the general public presents essentially the same restraint on expression as the seizure of all the books in a bookstore. Such precipitate action by a police officer, without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint and is, in those circumstances, *unreasonable under Fourth Amendment standards.* The seizure is unreasonable, not simply because it would have been easy to secure a warrant, but

rather because prior restraint of the right of expression, whether by books or films, *calls for a higher hurdle in the evaluation of reasonableness.* The setting of the bookstore or the commercial theatre, each presumptively under the protection of the First Amendment, invokes such *Fourth* Amendment warrant requirements because we examine what is 'unreasonable' in the light of the values of freedom of expression." *Id.* at 503–4, 93 S.Ct. at 2800–01 (emphasis added, footnotes and citation omitted).

*Zurcher v. Stanford Daily,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), fully supports this view. In *Zurcher,* the Court said that

> "*the prior cases do no more than insist that the courts apply the warrant requirements with particular exactitude when First Amendment interests would be endangered by the search.* As we see it, no more than this is required where the warrant requested is for the seizure of criminal evidence reasonably believed to be on the premises occupied by a newspaper. Properly administered, the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness—should afford sufficient protection against the harms that are assertedly threatened by warrants for searching newspaper offices." *Id.* at 565, 98 S.Ct. at 1981 (emphasis added).

While this language is particularly directed to newspaper offices and to the search of such offices, there is no reason why the same logic should not be applied to the search of premises in obscenity cases.

It is clear that appellant's allegations are simply *Fourth* Amendment claims. Although First Amendment values are involved, the Fourth Amendment (and the exclusionary rule) provide the only basis upon which habeas relief could conceivably be granted. Thus, despite appellant's protestations to the contrary, *Stone v. Powell* is applicable to the instant case.

## II. FULL AND FAIR OPPORTUNITY TO LITIGATE.

■ Because we hold that *Stone v. Powell* is applicable to the claims presented by appellant, our inquiry is necessarily of limited scope. We have emphasized on more than one occasion that "Under *Stone* a federal district court may not relitigate a fourth amendment issue tried fully and fairly in a state court, *regardless of its view of the correctness of the state decision.*" *Mack v. Cupp,* 564 F.2d 898, 901 (CA9 1977) (emphasis added). The record of the state proceedings compels the conclusion that appellant received a full and fair opportunity to litigate his Fourth Amendment claims. The identical claims pressed upon us were considered, and squarely rejected, by the Arizona courts. The transcript of the evidentiary hearing on the motion to suppress alone consists of 45 typewritten pages. The issues were thoroughly briefed at the trial level and rejected. The briefs on appeal to the Arizona Court of Appeals are substantial. The opinion of the Arizona Court of Appeals is four pages long, and it clearly indicates that appellant's contentions were carefully considered and squarely rejected. Appellant filed a motion for rehearing and a supporting memorandum which, in substance, raised the same claims. This motion was considered and denied by a three judge panel of the Arizona Court of Appeals. Thereafter, appellant fully exhausted his Arizona State post-conviction remedies. It is clear, therefore, that appellant was afforded a full and fair opportunity to litigate his Fourth Amendment claims in the state court. The recent case of *Sumner v. Mata,* —— U.S. ——, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), *vacating* and *remanding Mata v. Sumner,* 611 F.2d 754 (CA9 1979), is fully consistent with the views above expressed.

## CONCLUSION

The contentions presented by appellant, although they raise First Amendment considerations, are Fourth Amendment claims. Therefore, *Stone v. Powell* is applicable. Our study of the state record compels the conclusion that appellant had a full and fair

opportunity to litigate these claims. Accordingly, there is no basis upon which habeas relief can be granted. The decision of the district judge dismissing the petition for writ of habeas corpus must be affirmed.

. IT IS SO ORDERED.