James C. JENKINS, Plaintiff,

v.

Dave WARRINGTON and Eugene Bernardi, Defendants.

No. CV–80–30–GF.

United States District Court,
D. Montana,
Great Falls Division.

Jan. 7, 1982.

James C. Jenkins, pro se.

Alexander Blewett, III, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for defendants.

## MEMORANDUM OPINION AND ORDER

HATFIELD, District Judge.

Petitioner, a state prisoner convicted of two counts of armed robbery, seeks a writ of habeas corpus, pursuant to 28 U.S.C. §§ 2241 and 2254, on the ground that his constitutional rights under the Fourth and Fifth Amendments, as applicable to the states through the Fourteenth Amendment, were violated by the State of Montana during his criminal prosecution. The first ground petitioner asserts is that certain testimonies relating to eyewitness out-of-court identifications should have been suppressed as "fruits" of an illegal arrest. Second, petitioner asserts that the subsequent in-court identifications by those same witnesses should also have been suppressed as "fruits" of the illegal arrest. Finally, petitioner asserts that one of the aforementioned out-of-court identifications and resulting in-court identification should have been suppressed as violative of the due process standard.

In light of the fact that the petitioner's appeal to the Montana Supreme Court, in which the same constitutional issues now

raised were addressed and rejected, has been decided, the exhaustion requirement of 28 U.S.C. § 2254 has been satisfied.

## FACTUAL BACKGROUND

In the late afternoon of August 18, 1979, a man entered the Feedlot Restaurant in Great Falls, Montana and unsuccessfully attempted to rob the manager at gunpoint. A few minutes later a man entered the Mode O'Day clothing store in Great Falls and unsuccessfully attempted an armed robbery of the owner of the store. General, but similar, descriptions of the perpetrators of both robberies were given to the investigating officers of the Great Falls Police Department by the manager of the first establishment and the owner and several other witnesses present at the time in the second establishment.

Two days later, on August 20, 1979, Great Falls police detectives Dave Warrington and Eugene Bernardi entered the Lobby Bar in Great Falls and noticed the petitioner herein, James Clifton Jenkins. The events which then transpired form the factual basis on which this petition for habeas corpus is premised. The events as found by the state district court and reiterated by the Montana Supreme Court are recited in the latter court's opinion issued in *State of Montana v. Jenkins*, Mont., 629 P.2d 761, 38 St.Rep. 922 (1981):

> Warrington approached Jenkins and told him he fit the description of a robbery suspect. Jenkins had no identification and gave his name as Larry White. Jenkins was patted down in the waist area and asked if he would accompany the officers so that a witness could see him. Jenkins went with the officers voluntarily. He was not arrested or handcuffed. He was placed in the back seat of an unmarked police car, a yellow two-door Ford Fairmont. The three men then drove to the Mode O'Day store.
>
> Mavis Bean was not at the store. Warrington telephoned Pam Rains at her home and requested that they meet at a certain parking lot so Rains could see Jenkins for identification purposes. The detectives and Jenkins drove across town

to meet Rains. The police vehicle arrived at the parking lot first. When Rains arrived, Warrington got out of the car and went to Rains' vehicle, which was parked 60 feet away. Warrington told Rains he had two men seated in his car and asked her if she could identify either man as the robber. Detective Bernardi is 6'1" tall and weighs 200 pounds. He was sitting in the front seat. Jenkins is 5'9" tall and weighs 150 pounds and was in the backseat of the two-door vehicle. Rains approached the police car. When she was about 25 feet away, she pointed at Jenkins and said: "That's him." Warrington asked Rains to walk closer to the car. When she was 8–10 feet away, she stated that she was positive that the man in the backseat was the robber.

Jenkins was then told he was under arrest for the attempted robbery of the Feedlot. He was transported to the Great Falls Police Department and photographed there. While in custody, Jenkins gave a signed consent to search his apartment. A short-sleeve, open-collared shirt, off-white with aqua-green stripes, was found at the apartment. A photographic array containing Jenkins' photograph was shown to three of the witnesses to the robbery at the Mode O'Day and to the two customers of the Feedlot. Mavis Bean, Teresa Bean and Mrs. Robert Anderson all identified the photograph of Jenkins as the man who tried to rob the store. The Feedlot customers were unable to make a positive identification. Mavis Bean, Teresa Bean and Pam Rains also identified the shirt seized as the one worn by the man who attempted to rob them. Jenkins was then charged with the attempted robbery of the Mode O'Day.

However, the petitioner contends that his initial detention by the officers was tantamount to an arrest and that the officers acted on less than probable cause. The petitioner denies that he voluntarily accompanied the officers to their vehicle. Rather, petitioner contends that when he attempted to leave, the officers handcuffed him and

his subsequent requests to be let go were met with verbal abuse or threats of violence.

The petitioner contends that the testimonies of Pam Rains, Mavis Bean, Teresa Bean and Mrs. Robert Anderson concerning their pretrial identifications of him as the perpetrator of the robberies at issue, and their subsequent in-court identifications, should have been suppressed on Fourth Amendment grounds as the "fruits" of an illegal arrest.

In addition, the petitioner asserts that the out-of-court identification procedure utilized by the officers (i.e., one man showup) in relation to the testimony of Pam Rains was unnecessarily suggestive and hence violative of his right to due process. As such, petitioner maintains that testimony relating to both the out-of-court and in-court identifications by Pam Rains should have been suppressed.

FOURTH AMENDMENT CHALLENGE

Petitioner's request for habeas relief on Fourth Amendment grounds relies on the "fruit of the poisonous tree" doctrine as espoused in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), which established that evidence derived from a violation of the Fourth Amendment is subject to the exclusionary rule. Id. at 487–488, 83 S.Ct. at 417.

The Court in Wong Sun articulated the guiding principle for determining whether evidence derivatively obtained from a violation of the Fourth Amendment is admissi-

ble against the accused at trial: "The exclusionary prohibition extends as well to the indirect as the direct products of such invasions." Id. at 484, 83 S.Ct. at 415. Subsequent cases have confirmed the application of the exclusionary rule to any "fruits" of a constitutional violation—whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity or confessions or statements of the accused obtained during an illegal arrest and detention. See, United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

The question of whether identification evidence acquired following an illegal arrest is a tainted fruit of the arrest has caused the courts particular difficulty in applying the Wong Sun test. See, LaFave, Search and Seizure, § 11.4(g), Vol. 3 (1978).

However, for present purposes this court need not endeavor to apply the Wong Sun test, since reliance on the Fourth Amendment as the basis for habeas corpus relief is controlled by the Supreme Court's decision in Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In Stone the Supreme Court held that a state prisoner could not collaterally attack a state conviction on the grounds that illegal evidence was admitted at trial, where the "[S]tate has provided an opportunity for full and fair litigation of a Fourth Amendment claim." Id. 371 U.S. at 494, 83 S.Ct. at 420.[1]

---

1. The rationale underlying this rule is succinctly stated in footnote 31 of the Stone decision:

Resort to habeas corpus, especially for purposes other than to assure that no innocent person suffers an unconstitutional loss of liberty, results in serious intrusions on values important to our system of government. They include "(i) the most effective utilization of limited judicial resources, (ii) the necessity of finality in criminal trials, (iii) the minimization of friction between our federal and state systems of justice, and (iv) the maintenance of the constitutional balance upon which the doctrine of federalism is founded." Schneckloth v. Bustamonte, 412 U.S. [218] at 259 [93 S.Ct. 2041, 2064, 36 L.Ed.2d 854] (Powell, J., concurring). See also Kaufman v. United States, 394 U.S. [217] at 231 [89 S.Ct. 1068, 1076, 22 L.Ed.2d

227]. (Black, J., dissenting); Friendly, supra, n.13.

We nevertheless afford broad habeas corpus relief, recognizing the need in a free society for an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty. The Court in Fay v. Noia described habeas corpus as a remedy for "whatever society deems to be intolerable restraints," and recognized that those to whom the writ should be granted "are persons whom society has grievously wronged." 372 U.S. [391] at 401, 441 [83 S.Ct. 822, 828, 850, 9 L.Ed.2d 837]. But in the case of a typical Fourth Amendment claim, asserted on collateral attack, a convicted defendant is usually asking society to redetermine an issue that has no bearing on the basic justice of his incarceration.

■ Therefore, where a prisoner's petition for federal habeas corpus is predicated upon a claim of unconstitutional search or seizure, the *Stone* rule requires that the petition be denied where the record of the state proceedings clearly indicates that the petitioner was given a full and fair opportunity to litigate that claim in state court. *Abell v. Raines*, 640 F.2d 1085 (9th Cir. 1981); *Cody v. Morris*, 623 F.2d 101 (9th Cir. 1980). Furthermore, where a prisoner fails to assert that the state courts had denied him a full and fair opportunity to litigate his Fourth Amendment claim, he is barred from seeking a federal writ of habeas corpus. *Allen v. McCurry*, 449 U.S. 90, 91, 101 S.Ct. 411, 413, 66 L.Ed.2d 308 (1981).

■ In the present case, not only does the petitioner fail to assert that the state courts had denied him a full and fair opportunity to litigate his Fourth Amendment claim, but the record clearly indicates that he was afforded that opportunity.

At a suppression hearing held before the criminal trial, Jenkins invoked the same Fourth Amendment claims raised in the present petition. The trial court denied the motion to suppress[2] and the petitioner was convicted. The petitioner's conviction was later affirmed on appeal to the Montana Supreme Court. *State v. Jenkins, supra.*

The foregoing analysis convinces this court that the petitioner is barred from collaterally attacking his conviction on Fourth Amendment grounds, since the record clearly establishes that he was provided a full and fair opportunity to litigate in state court the Fourth Amendment issues raised in his petition for habeas corpus relief.

## DUE PROCESS CHALLENGE

The petitioner also asserts that he is entitled to habeas corpus relief, as to the conviction for robbery of the Feedlot Restaurant, on the ground that the identification procedure (*i.e.*, one-man showup) utilized by the officers was violative of the due process standard.

The Supreme Court in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) set forth the basis of such a claim as being that the identification procedure was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he [defendant] was denied due process of law." *Id.* at 302, 87 S.Ct. at 1972.

In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court established that unnecessary suggestiveness alone does not require the exclusion of evidence. The Court stressed that if there has been suggestiveness a subsequent in-court identification is inadmissible only if there is a very substantial likelihood of irreparable misidentification. *Id.* at 198, 93 S.Ct. at 381. In relation to the admissibility of testimony concerning an out-of-court identification, the same test, deleting the "irreparable" requirement, serves as the standard of admissibility. *Id.* The Court in *Neil* stressed that in applying this test, the totality of the circumstances must be evaluated. The Court enumerated the factors which courts must consider in determining the likelihood of misidentification: (1) the opportunity to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) accuracy of the witness' prior description, (4) level of certainty demonstrated by the witness at the time of confrontation and (5) the length of time between the crime and the confrontation. *Id.* at 199–200, 93 S.Ct. at 382.

In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court reaffirmed the totality of the circumstances approach to evaluating due process challenges, concluding that "reliability is the linchpin in determining the admissibility of identification testimony." *Id.* at 114, 97 S.Ct. at 2253. The Court reiterated that the factors as set forth in *Neil v. Biggers, supra*, are to be weighed against the corrupting effect of the suggestive identification itself, rejecting the con-

---

**2.** Petitioner's entire contention is based upon the assertion that he was illegally under arrest prior to the initial identification by Pam Rains.

However, the trial court concluded that the petitioner had voluntarily accompanied the officers.

tention that due process mandates a *per se* rule of exclusion. *Id.* at 114, 97 S.Ct. at 2253.

In the present case, the petitioner sought suppression of testimony relating to both the out-of-court identification made by Pam Rains and her subsequent in-court identification. After holding a suppression hearing on the matter, the trial court denied the petitioner's motion.

The same issues were subsequently raised on appeal to the Montana Supreme Court. 38 St.Rep. 922, 629 P.2d 761. Applying the totality of the circumstances test as espoused in *Manson, supra,* the court held that while the identification procedure was suggestive, it did not create a situation in which there was a substantial likelihood of misidentification. *Id.* 38 St.Rep. at 926, 629 P.2d 761. Therefore, the court affirmed the trial court's determination that neither the admission of testimony concerning the out-of-court identification made by Pam Rains nor her subsequent in-court identification violated petitioner's right to due process.

An exhaustive assessment of the record in the present case and application of the pertinent law leads this court to conclude that the petitioner was not denied due process of law.

■ As to the out-of-court identification, this court agrees with the finding of the Montana Supreme Court that the procedure utilized (*i.e.,* one-man showup) was unnecessarily suggestive. In light of the fact that the practice of showing suspects singly to persons for the purpose of identification has been widely condemned, absent unique circumstances which necessitate the utilization of that procedure,[3] it is indeed regrettable that law enforcement officials continue to use this questionable method of identification. However, regardless of this court's viewpoint on the matter of one-man showups, it is obligated to apply the rule of law espoused in *Neil* and refined in *Manson* in determining whether a particular defendant's right to due process was violated.

The unnecessary suggestiveness of the procedure alone does not require the exclusion of the identification testimony. Rather, the factors as set forth in *Neil* are to be weighed against the corrupting effect of the suggestive identification itself. *Manson* 432 U.S. at 114, 97 S.Ct. at 2253.

■ In the present case, the out-of-court identification testimony of concern is that of the victim, Pam Rains, who was subjected to the one-man showup. A review of the record, specifically the suppression hearing transcript, reveals that the victim undoubtedly had a good opportunity to view the perpetrator at the time of the crime, since he was standing directly across a counter for a significant period of time in a well lit store. Second, there is no indication that the victim was unattentive or that her attention was diverted during this period of time. Third, the victim's prior description was accurate enough so as not to weigh heavily in the present assessment. Fourth, there is no indication that the victim exhibited any uncertainty at the time of the identification confrontation. Finally, the length of time between the commission of the crime and the identification confrontation (*i.e.,* two days) is similar to the time span considered to be not significant in *Manson.*

Weighing the foregoing factors against the corrupting effect of the suggestiveness of the identification procedure at issue, as mandated by *Manson,* this court concludes that the out-of-court identification made by Pam Rains was reliable. As such, this court fails to find that the petitioner's right to due process was violated since there did not exist a substantial likelihood of misidentification.

The determination having been made that the admission of the out-of-court identification did not violate the petitioner's right to due process, it necessarily follows that the admission of the in-court identification could not have violated that right.

For the reasons set forth above, it is HEREBY ORDERED that the petitioner's

**3.** *See Stovall v. Denno, supra; Bates v. United* *States,* 405 F.2d 1104 (D.C. Cir. 1968).

request for a writ of habeas corpus is DE-NIED.