996 F.2d 1227
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Paul Anthony RUPE, Petitioner-Appellant,
v.
Robert Glen BORG, Defendant-Appellee.
 No. 92-16017.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 10, 1993.*
Decided May 20, 1993.
 
 Before REINHARDT, TROTT, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Paul Anthony Rupe appeals the denial of his petition for habeas corpus arising from his conviction for first degree murder of his ex-wife, Natalie Rupe, and second degree murder of her friend, Debbie Robbins. The district court adopted the magistrate judge's recommendations in full, and Rupe raises several issues on appeal. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Rupe first argues that his Fifth Amendment Due Process rights were violated because the police failed to obtain certain evidence. Specifically, Rupe points to the failure: (1) to take fingerprint samples of Natalie Rupe, Robbins, Robbins's brother, Robbins's cousin and his family, and two firemen, all of whom were at the murder scene before police arrived; (2) to interview Sheriff's Deputies about Robbins and Natalie Rupe's burglary of Rupe's residence, and to provide Rupe with the Deputies's reports sooner; (3) to find and preserve Robbins's firearms which were "known to have been stolen" from Rupe, and; (4) to preserve a tape of a phone call between the Chief Deputy District Attorney and an investigator, which ostensibly planned an investigation "tailored to confirm ... guilt."
 
 
 4
 The Constitution places a duty on police to preserve certain evidence. This duty is limited to "evidence that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). This evidence must "possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489. Even if the evidence meets these requirements, however, due process will only be violated when the police act in bad faith. Arizona v. Youngblood, 488 U.S. 51, 58 (1988). In addition, the duty extends only to the preservation of evidence; there is no duty on the police to obtain exculpatory evidence. Miller v. Vasquez, 868 F.2d 1116, 1119 (9th Cir.1989).
 
 
 5
 None of Rupe's claims meets the requirements of Trombetta, Youngblood, or Miller. Robbins and Natalie Rupe's fingerprints do not appear to be "significant" to Rupe's defense; nor do the fingerprints of the others at the murder scene, which nevertheless Rupe could have readily obtained.[1] The same is true for the interviews with Sheriff Deputies, and evidence of Robbins's ostensibly stolen firearms. The evidence concerning the Chief Deputy D.A. and the investigator's phone conversation is speculative and capable of investigation by Rupe. Hence, none of the evidence meets Trombetta's requirements of exculpatory value and unavailability.
 
 
 6
 Even if it did, the evidence cannot overcome two constitutional hurdles. Rupe has not shown bad faith as required by Youngblood. 488 U.S. at 58 (1988). In addition, most of Rupe's claims concern evidence which was not obtained, rather than evidence which was obtained but not preserved. Trombetta does not impose a duty to obtain evidence. Miller, 868 F.2d at 1119.
 
 II
 
 7
 Rupe next argues that his Fourth Amendment rights were violated because his house was searched without his consent. In Stone v. Powell, 428 U.S. 465, 481-82 (1976), the Supreme Court held that where the State has provided a full and fair hearing of a Fourth Amendment claim, habeas relief cannot be granted based on the Fourth Amendment. Rupe contends that he was denied a full and fair hearing because Redding police officer Thomas W. Sears, who taped Rupe's consent, tampered with a tape recording and was allowed to testify as to matters which were ostensibly erased on the tape.
 
 
 8
 The requirements of a "full and fair hearing" are set by Townsend v. Sain, 372 U.S. 293 (1963) and Abell v. Raines, 640 F.2d 1085, 1088 (9th Cir.1981). See Terrovona v. Kincheloe, 912 F.2d 1176, 1178-79 (9th Cir.1990), cert. denied, 111 S.Ct. 1631 (1991). Townsend requires us to look at the trial court's fact finding, and Abell instructs us to look at the extent to which the claims were briefed before and considered by the state trial and appellate court. Terrovona, 912 F.2d at 1178 & n. 4. The trial court considered Rupe's motion to suppress in detail, taking up over two hundred pages of trial transcripts. Rupe claimed that he only consented to the search if he could be present, but Sears testified that Rupe's consent was unconditional. The trial judge chose to believe Sears, even in light of some apparent irregularities in the tape recording. These findings are supported in the record. Since Rupe received a full and fair litigation of his Fourth Amendment claim, Stone precludes relief. See Terrovona, 912 F.2d at 1179 (declining to review Fourth Amendment claim).
 
 III
 
 9
 Rupe next argues that he deserves an evidentiary hearing on his claim that the prosecutor knowingly used perjured testimony. An evidentiary hearing is required when: "(1) the petitioner's allegations, if proved, would entitle him to relief, and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." Terrovona v. Kincheloe, 912 F.2d 1176, 1181 (9th Cir.1990); see also Townsend v. Sain, 372 U.S. 293, 312-13 (1963). "A conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the outcome of the trial." United States v. Sherlock, 962 F.2d 1349, 1364 (9th Cir.1989) (quoting United States v. Polizzi, 801 F.2d 1543, 1549 (9th Cir.1986)), cert. denied, 113 S.Ct. 419 (1992).
 
 
 10
 At trial, Paula Burns testified that on the morning of the murder she was listening to Channel 9 on her CB radio when she heard a faint voice, in obvious pain, say the word "Paul" three times. Burns then asked where the person was calling from, and she heard the voice say "Churn," perhaps in reference to the Churn Court residence where the murders took place. Burns continued to monitor the CB radio, and some time later she heard Cameron Cowart, Robbins's cousin, come on to tell her to call a relative. Robbins was found dead with her outstretched hand extended to within three inches of her dangling CB radio microphone, and the CB radio was turned on.
 
 
 11
 Rupe argued to the magistrate judge that Burns's testimony was knowingly perjured because a photograph, in the possession of the District Attorney, conclusively showed that Robbins's CB was turned to channel 10, not 9. Rupe also now argues that Burns's testimony, which was about events occurring around 6:25 a.m. the morning of the murder, contradicted the State pathologist's testimony that the time of the deaths was 5:30 a.m., further evincing Burns's lack of truthfulness.
 
 
 12
 The magistrate judge found that no evidentiary hearing was necessary since any perjured testimony was, "beyond any doubt," harmless. We agree. Rupe was identified by his own daughter, an eyewitness, as the murderer; blood stains matching Robbins's blood type were found on Rupe's motorcycle and at his residence; a cigarette package with Rupe's fingerprints was found laying beside Natalie Rupe's dead body; Rupe, armed with a knife, had attempted the night before the murder to break into the Churn Court house, and upon being bailed out for this crime the following morning, Rupe was driven back to the Churn Court neighborhood around the time of the murders. Thus, even if Rupe were correct that the prosecutor knowingly presented perjured testimony, he would not be entitled to relief since there is not a "reasonable likelihood" that the verdict would be different.[2]
 
 IV
 
 13
 Rupe next argues that his Sixth Amendment Confrontation Clause rights were violated when testimony about Robbins and Natalie Rupe's fear of Rupe was elicited. The Confrontation Clause is not violated when an out of court declarant is unavailable and the declaration falls within a firmly rooted hearsay exception. White v. Illinois, 112 S.Ct. 736, 743 (1992). The statements about the murder victims' fear of Rupe fall within the state of mind exception to the hearsay rule. See Cal.Evid.Code, § 1250; People v. Thompson, 45 Cal.3d 86, 101-03 (1988) (admitting victim's statement of fear of defendant because relevant to victim's conduct), cert. denied, 488 U.S. 960 (1988); see also Fed.R.Evid. 803(3). Rupe seeks to distinguish Thompson and other state of mind authorities because they do not fall within a "firmly" rooted hearsay exception. Even if Rupe were correct, confrontation clause violations are subject to harmless error analysis. United States v. Wilmer, 799 F.2d 495, 501 (9th Cir.1986), cert. denied, 481 U.S. 1004 (1987). Any error in admitting the statements was harmless beyond a reasonable doubt. See supra § III.
 
 
 14
 Rupe also argues that the evidence was irrelevant. The evidence was admitted for the limited purpose of proving that the victims' conduct of not permitting Rupe to enter the house was consistent with their fear. Improper admission of evidence (absent constitutional violations) is not a ground for habeas relief unless it renders the trial fundamentally unfair. Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991). Though the fear evidence could arguably have been overdone, it did not render the trial fundamentally unfair. Other evidence was properly admitted from which the basis for the victims' fear could be inferred, so at most the evidence was cumulative.
 
 V
 
 15
 Rupe next argues that he should have been granted a change of venue because of pretrial publicity. The magistrate judge did not reach the merits because he found that Rupe had procedurally defaulted on the change of venue issue. Rupe failed to renew his motion for a change of venue after jury selection, and the California Court of Appeal found that this failure waived any change of venue issues, citing California cases. The magistrate judge considered this ruling an "independent and adequate" state ground for denying the motion, which thus barred habeas review.
 
 
 16
 We agree. Coleman v. Thompson, 111 S.Ct. 2546 (1991) held that federal habeas review is barred "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Id. at 2554. California requires that a defendant renew a change of venue motion after jury selection. See, e.g., Hoover, 187 Cal.App.3d at 1085 (failure to renew motion is waiver of the claim). Contrary to Rupe's argument, this practice is "firmly established and regularly followed." Ford v. Georgia, 111 S.Ct. 850, 857 (1991); see, e.g., People v. McGhee, 193 Cal.App.3d 1333, 1346 (1987) (applying Hoover ); People v. Howard, 1 Cal.4th 1132, 1166 (1992) (distinguishing Hoover ), cert. denied, 113 S.Ct. 383 (1992). By failing to renew his change of venue motion, Rupe is now barred from habeas review.[3]
 
 
 17
 Rupe nevertheless argues that he was denied his equal protection right to an impartial jury because the state failed to grant him a change of venue. Since California granted a change of venue in People v. Williams, 48 Cal.3d 1112 (1989), cert. denied, 494 U.S. 1038 (1990), a case which Rupe suggests is less egregious than his case, Rupe argues that it was arbitrary for the state to have denied him a change of venue.
 
 
 18
 This equal protection twist to Rupe's change of venue argument is insufficient to avoid the procedural bar of Coleman. Even so, the defendant in Williams properly preserved his change of venue argument, making Williams distinguishable from Rupe's case. See Williams, 48 Cal.3d at 1124.
 
 VI
 
 19
 Rupe also argues that he was denied effective assistance of counsel. To succeed, Rupe must show that his counsel's performance fell below an objective standard of reasonableness, creating a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-92 (1984). Rupe first argues that his counsel's failure to move for sanctions under People v. Hitch, 12 Cal.3d 641, 652 (1974) was objectively unreasonable. Hitch held that sanctions will be invoked against the government for loss of evidence. Id. Hitch specifically dealt with the failure to preserve breath samples in drunk driving prosecutions.
 
 
 20
 Rupe argues that his counsel should have moved for Hitch sanctions for the government's failure to take Robbins's and Natalie Rupe's fingerprints, and the destruction of Rupe's tape recorded consent to a search of his home. The magistrate judge held that the Hitch motion would not have prevailed as to Robbins's and Natalie Rupe's fingerprints since Rupe was alleging the failure to obtain evidence, not the failure to preserve evidence. We agree. Rupe's arguments are essentially that the police should have conducted a more thorough investigation, something not protected by Hitch.
 
 
 21
 Similarly, a Hitch motion would not have prevailed on Rupe's argument concerning the taped consent. The trial court held that the irregularities on the tape recording could have occurred for several reasons, not all of which were "sinister." Consequently, sanctions would not have been appropriate. The failure to raise a meritless motion is not ineffective assistance of counsel. Borg v. Raines, 769 F.2d 1341, 1344 (9th Cir.1985), cert. denied, 474 U.S. 1085 (1986).
 
 
 22
 Rupe next argues that his counsel was ineffective by failing to preserve the change of venue issue for appeal. This argument fails because counsel's failure to preserve the issue for appeal would not have changed the outcome on appeal. As an alternative to renewing the motion for a change of venue, Rupe's counsel unsuccessfully sought extra peremptory challenges. Rupe challenged the denial of peremptory challenges on appeal, and the California Court of Appeal upheld the trial court. The Court of Appeal held:
 
 
 23
 We cannot take issue with the trial court's ruling denying the motion. Our review of the record shows the voir dire examination was exhaustive, with open court examination of each juror by the court, coupled with each prospective juror examined individually in chambers as to his or her knowledge of the facts of the case.
 
 
 24
 Given this ruling, it is unlikely that Rupe would have succeeded on his venue argument on appeal. The conclusion is buttressed by the trial court's extensive voir dire. The voir dire involved over 200 jurors, took several days, and the 12 jurors ultimately selected all assured the trial court that they could be impartial. We cannot say that had the motion for change of venue been preserved, there is a "reasonable probability" that the outcome would have been different. Cf. Harris v. Pulley, 885 F.2d 1354, 1363 (9th Cir.1988), cert. denied, 493 U.S. 1051 (1990) (Constitution only requires that jurors be able to lay aside preconceived impression or opinion and render a verdict based on the evidence).
 
 
 25
 Finally, Rupe argues that his counsel was ineffective in failing to present certain exculpatory evidence, specifically, Rupe's five year old daughter Nicole's inconsistent statements about the murder, Officer Reynold's improbable testimony, and Investigator Sears's willful tampering with the tape recording of Rupe's consent to a search of his home. With respect to all of these actions, counsel acted within the "wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984). As the magistrate judge noted, cross-examination of a child is a treacherous task. Rupe's counsel did raise inconsistencies in Nicole's statements, and argued during closing that Nicole had been coached into identifying her father. This approach is well within the wide range of permissible advocacy.
 
 
 26
 Next Rupe points out a discrepancy in the time Officer Reynolds interviewed Nicole. Reynolds testified that he interviewed Nicole between 10:05 and 10:20 a.m.. However, Rupe now points to a declaration that shows that Reynolds was interviewing Rupe at this time. Rupe argues that this discrepancy shows that Reynolds coached Natalie into identifying her father. Yet Rupe's counsel made this coaching argument to the jury. That the argument was not made more aggressively through the time evidence does not amount to a constitutional violation. Finally, counsel's failure to put the evidence of Investigator Sears's tampering with the tape of Rupe's consent is not error; the trial judge found that there was no bad faith tampering with the tape. Hence, there was nothing to put to the jury.
 
 
 27
 The magistrate judge noted that Rupe's counsel chose to focus on avoiding a conviction for first degree murder, at the possible expense of not emphasizing these and perhaps other discrepancies in the evidence. Given the overwhelming case against Rupe, counsel's strategy fell well within the wide range of permissible conduct. See Strickland, 466 U.S. at 690-91 (strategic choices made after thorough investigation of law and facts ... are virtually unchallengeable.").
 
 
 28
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The police found six fingerprints at the Churn Court residence, none of which matched Rupe's. Rupe argues that if the police had taken the fingerprints of the others at the murder scene, and the six fingerprints did not match theirs, the six fingerprints could have been those of the real killer. Rupe could have obtained everyone but Robbins's and Natalie's fingerprints to test this theory himself. Moreover, there is nothing surprising, or exculpatory, about a house having fingerprints in it
 
 
 [2]
 We also note that Rupe's arguments about the perjured testimony are tenuous. The photograph does not necessarily impeach Burns since the CB station could have been changed in between Burn's conversation and the picture. At most, the photograph hurts Burns's credibility; it does not, however, establish knowing use of perjury by the prosecutor
 
 
 [3]
 Coleman recognized two instances in which the procedural default rule will not be applied: if the petitioner can show cause for the default and prejudice arising from the default, or if failure to consider the claims will result in a fundamental miscarriage of justice. Id., 111 S.Ct. at 2565. Rupe's cause argument is incorporated in his ineffective assistance of counsel arguments. In light of the extensive voir dire by the trial court, the holding of the California Court of Appeals that Rupe's jury was fair and impartial, and the overwhelming evidence of Rupe's guilt, we find that the procedural bar does not lead to a fundamental miscarriage of justice