37 F.3d 1505
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Jacek Jerzy GABRYELSKI, Petitioner-Appellant,
v.
Vernon SMITH, Warden; Attorney General of California,
Respondents-Appellees.
 No. 93-16108.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 15, 1994.
Submission Withdrawn May 31, 1994.
Resubmitted Sept. 1, 1994.
Decided Sept. 23, 1994.
 
 1
 Before: NORRIS and O'SCANNLAIN, Circuit Judges; COUGHENOUR,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Jacek Gabryelski resided in Tahoma County, California in October 1987. William Haake, Gabryelski's neighbor, called the Tahoma County Sheriff's Department on October 2, 1987 to report a possible homicide. Deputy Sheriff Parker drove out to investigate and met Haake at a friend's residence.
 
 
 4
 Haake told Parker that he had seen Gabryelski and his girlfriend, LeeAnn Garrabrant, arguing violently on the previous evening. According to Haake, Gabryelski had pulled Garrabrant's hair, kicked her, and pointed a sawed-off shotgun to her head. When Garrabrant ran outdoors, Gabryelski assertedly pursued her carrying the shotgun. Haake said that he heard a shot five minutes later and had not seen Garrabrant since that time. Haake also told Parker that Gabryelski operated a drug lab, used methamphetamines and possessed automatic weapons.
 
 
 5
 Parker and seven other deputies drove to Haake's house. On the way there, they encountered and stopped Gabryelski. Parker told Gabryelski that he had information that Gabryelski may have shot Garrabrant, that he believed that Garrabrant was dead or wounded, and that he was going to search for her on Haake's property, Gabryelski's property, and the undeveloped land between the two residences. At that time, Parker did not ask Gabryelski where Garrabrant was.
 
 
 6
 Parker first searched the land between the two residences, yelling for Garrabrant. Deputies then searched Haake's residence. When the deputies received a radio dispatch that someone was reported at Gabryelski's house, they walked there, shouting Garrabrant's name.
 
 
 7
 As Parker arrived on Gabryelski's property, he spotted some bottles of sulfuric acid and three marijuana plants. He looked through the window of Gabryelski's house to see if Garrabrant was inside. He did not see her.
 
 
 8
 Parker gave instructions for Gabryelski to be arrested for cultivating marijuana. He also asked for another deputy to seek Gabryelski's permission to search the house for Garrabrant. After Deputy Parker received word that Gabryelski had consented to the search, he entered Gabryelski's house. He later testified that he would have entered the house even without Gabryelski's consent in order to look for a dead or dying body. As it turns out, Garrabrant was neither killed nor injured by Gabryelski.
 
 
 9
 Parker obtained a search warrant and returned to Gabryelski's residence on the following day, October 3. He and other deputies discovered and seized various firearms, including several rifles, pistols, a revolver and two shotguns.
 
 
 10
 Gabryelski ultimately was charged with illegal possession of marijuana and various weapons, receiving stolen property, cultivation of marijuana, manufacturing methamphetamine, and assault with a firearm. He pled not guilty and sought to suppress the evidence seized pursuant to the search warrant, asserting that the warrant was tainted because it was based on deputies' observations during their warrantless search on the previous day. Gabryelski made an oral motion to suppress at a preliminary hearing heard by a magistrate-judge with the California Justice Court on December 8, 1987. At this hearing, Gabryelski argued that he had not given his consent for the pre-warrant search of his property and that exigent circumstances were not present to permit this search. After hearing witness testimony, the court found that Gabryelski had consented to the search and denied the motion.
 
 
 11
 Gabryelski next filed a written motion to suppress with the Superior Court of the State of California. Gabryelski again argued that no emergency circumstances existed at the time of the search and that he had not given consent. The Superior Court heard the motion on January 8, 1988. It determined that the December 8 hearing had constituted a suppression hearing and that Gabryelski's motion had been properly denied.
 
 
 12
 After his conviction, Gabryelski appealed the denial of his suppression motion to the California Court of Appeal. That court affirmed, holding that the lower court properly denied Gabryelski's motion to suppress because exigent circumstances justified the October 2 search. The court also rejected Gabryelski's claim that he had received ineffective assistance of counsel in the suppression proceedings. Gabryelski's subsequent petition for review was denied by the California Supreme Court.
 
 
 13
 Gabryelski filed the instant petition on March 15, 1991. The district court denied the petition and issued a certificate of probable cause. Gabryelski timely appealed.
 
 
 14
 * Gabryelski's petition asserts that the officers who searched his property on October 2 without a warrant violated his Fourth Amendment search and seizure rights. Such a claim ordinarily is not cognizable on habeas review unless the petitioner did not receive a full and fair hearing of the claim before the state courts. Stone v. Powell, 428 U.S. 465, 482 (1976); Terrovona v. Kincheloe, 852 F.2d 424, 428 (9th Cir.1988); Mack v. Cupp, 564 F.2d 898, 901-02 (9th Cir.1977). Gabryelski contends that this exception should apply here, asserting that he did not receive a full and fair hearing of his motion to suppress in state court.
 
 
 15
 The Supreme Court has not affirmatively defined what constitutes a "full and fair hearing." This circuit first considered the requisites for a full and fair hearing in Mack, where the court looked to Townsend v. Sain, 372 U.S. 293 (1963), to determine whether a litigant had received a full and fair opportunity to litigate a claim in a state evidentiary hearing. Under Townsend, a state evidentiary hearing is not full and fair if:
 
 
 16
 (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.
 
 
 17
 Mack, 564 F.2d at 900-01 (quoting Townsend, 428 U.S. at 313). The Mack court cautioned, however, that:
 
 
 18
 [a]lthough we think that the Townsend test must be given great weight in defining what constitutes full and fair consideration under Stone, we do not believe that it must always be applied literally ... as the sole measure of fullness and fairness. Townsend was concerned with the accuracy of the state's decision making, a consideration that is not relevant to the mandate of Stone v. Powell.
 
 
 19
 Id. at 901. In addition, a state also must provide a defendant with a full and fair opportunity for appellate review of his or her Fourth Amendment claims. See Terrovona v. Kincheloe, 912 F.2d 1176, 1178-79 (9th Cir.1990), cert. denied, 499 U.S. 979 (1991). Gabryelski asserts, in essence, that Townsend factors (5) and (1) indicate that he did not receive a full and fair suppression hearing. The remaining factors are inapplicable.
 
 
 20
 Gabryelski first claims that the Justice Court magistrate-judge "cut off" his ability to adduce evidence negating a finding of exigent circumstances at his suppression hearing. The record contradicts this claim. Early in the hearing, the magistrate-judge first inquired whether Gabryelski sought to suppress evidence that was obtained pursuant to a search warrant. Gabryelski admitted that the evidence was seized pursuant to a warrant but argued that this evidence was tainted as fruit from the earlier warrantless search of his property. Gabryelski argued that the warrantless search was illegal because it was not authorized by either his consent or by exigent circumstances. According to the State, however, exigent circumstances were present during this first search because police had been informed that Garrabrant may have been shot by Gabryelski on or near his property.
 
 
 21
 The court ruled that Gabryelski had the burden of going forward and remarked that it understood Gabryelski's position to be that the later search warrant was "invalid." Counsel for the State then asserted that, in order for the suppression hearing to continue, Gabryelski would have to offer proof that the officer who had signed the statement of probable cause in support of that warrant had lied. In response, Gabryelski observed that he sought only to demonstrate that the prior, warrantless search was illegal because of lack of consent or exigent circumstances. Hearing these arguments, the court concluded that Gabryelski could go forward with his motion but would bear the burden of attacking the subsequent search warrant. The court then directed Gabryelski to "proceed."
 
 
 22
 Gabryelski called officer Parker as his first witness. Gabryelski repeatedly questioned Parker about his motive for entering upon Gabryelski's property in the first search, and Parker answered on each occasion that he was looking for Garrabrant. On three separate occasions, the State objected to Gabryelski's questioning on the ground that it was not directed to showing that the statement of probable cause contained any untruths. The court denied each of those objections and did not limit Gabryelski's examination to the scope requested by the State.
 
 
 23
 Gabryelski's second witness was officer Plemons. Although Gabryelski called Plemons in order to dispute the State's claim that Gabryelski had consented to the warrantless search, he also questioned Plemons about the existence of exigent circumstances. When the State raised a relevancy objection to this line of questioning, Gabryelski informed the court that he was trying to show that the officers had an objective other than exigent circumstances for searching his property. The court then denied the State's objection, stating, "[o]kay. I will allow the evidence on that singular point."
 
 
 24
 Later during the examination of officer Plemons, the court inquired of the relevance of certain testimony that Gabryelski sought to elicit. Gabryelski responded that he was trying to show that the officers were on his property, not because of exigent circumstances, but because of their desire to search for narcotics. The court then observed, "[w]hat is Deputy Plemons going to tell you about that? I understand your point. I just don't understand why you are calling Deputy Plemons to testify on that issue" (emphasis added). After further explanation by Gabryelski, the court allowed the examination to continue.
 
 
 25
 Gabryelski himself was the third witness to testify. His testimony was directed partly toward discrediting the State's claim that officers entered onto his property in order to find Ms. Garrabrant.
 
 
 26
 The government then called its witnesses to testify. During Gabryelski's cross-examination of one of these witnesses, the State objected to Gabryelski's effort to impeach the witness. Gabryelski explained to the court why his impeaching material was relevant and observed, "I think you [the court] and counsel for the People understand that what I am trying to establish here is that they, the officers had other motives besides searching for Mrs. Garrabrant."
 
 
 27
 Finally, in closing argument, Gabryelski reasserted his claim that the search was not supported by exigent circumstances. He explained to the court that there was neither exigency nor consent to permit the warrantless search and contended that the officers had searched his property solely in order to find narcotics. The State addressed the exigency issue in its closing argument as well, asserting that the warrantless search was justified by exigent circumstances.
 
 
 28
 The foregoing makes it clear that Gabryelski had a full, unabridged opportunity to develop a factual record in support of his claim that exigent circumstances did not justify the warrantless search of his property. He thus was not "cut off" from raising this argument at the suppression hearing.
 
 
 29
 Gabryelski also claims that the magistrate-judge made no finding on whether exigent circumstances existed. Whether the magistrate made a finding on exigent circumstances is irrelevant, however, because he found that Gabryelski had consented to the search--an independent basis for denying the motion to suppress. Although Gabryelski contends that consent was not a valid ground for the search, this does not avail him because "the issue of whether the state court correctly applied the law of search and seizure is apparently totally irrelevant as long as state procedures were fair." Mack, 564 F.2d at 901 (quotation omitted). See also Caldwell v. Cupp, 781 F.2d 714, 715 (9th Cir.1986).
 
 
 30
 Further, although the California Court of Appeal upheld the denial of the suppression motion on exigent circumstances grounds, this decision too is unassailable as allegedly incorrect. See Locks v. Sumner, 703 F.2d 403, 408 (9th Cir.), cert. denied, 464 U.S. 933 (1983); Abell v. Raines, 640 F.2d 1085, 1088 (9th Cir.1981); Mack, 564 F.2d at 902. So long as the state appellate court fully considered Gabryelski's suppression claims, habeas review of Gabryelski's Fourth Amendment claim is barred. Gabryelski provides no explanation why the appellate court could not affirm the lower court's decision on any basis supported by the record, as is often the case in federal appellate court practice. Given that a state appellate court is entitled to affirm a lower court decision on facts not in the record when reviewing a Fourth Amendment claim, see Locks, 703 F.2d at 408; Mack, 564 F.2d at 902, it similarly is entitled to affirm on reasons supported by any facts that are present in the record.
 
 II
 
 31
 Gabryelski also contends that he received ineffective assistance of counsel at his suppression hearing. Although his claim is based on his counsel's purportedly incompetent representation in Fourth Amendment proceedings, it is cognizable in federal habeas review. Kimmelman v. Morrison, 477 U.S. 365, 382-83 (1985). To succeed, Gabryelski must establish that his attorney's conduct fell below an objective standard of reasonableness and that this attorney's error caused him actual prejudice. Strickland v. Washington, 466 U.S. 668, 693-94 (1984).
 
 
 32
 Gabryelski first asserts that his attorney erred because he did not clearly inform the Justice Court magistrate-judge that he was disputing the existence of exigent circumstances. As discussed above, the record contradicts this claim. He next claims that his attorney failed to investigate and to prepare for the suppression motion. The district court rejected this claim because Gabryelski had alleged no specific facts in support of it. Gabryelski's appeal carries over this deficiency, for his brief does not explain what specific matters his attorney should have investigated and does not cite to the record.
 
 
 33
 Gabryelski also asserts that his attorney failed to ask him during direct examination whether an emergency existed. Gabryelski himself explains why the failure to ask such a question was not prejudicial to his defense: "Had the question of emergency been raised, the test would have been whether it was reasonable to believe and the officers in fact believed the allegations of Mr. Haake, not whether in fact Ms. Garrabrant was endangered." At best, Gabryelski could have testified as to whether Garrabrant was, in fact, in danger. Such testimony would not have indicated whether it was reasonable for the deputies to have believed a report that she was in danger.
 
 
 34
 Next, Gabryelski claims that his attorney erred by not calling Haake as a witness during the suppression hearing. According to Gabryelski, such an examination would have revealed that Haake was aware that Garrabrant was not in danger when he called the police. As discussed above, however, Haake's testimony would not have availed Gabryelski because it is not material to whether the deputies reasonably believed that Garrabrant was in danger. For the same reason, witnesses who could have testified as to Haake's fabrication of his report would not have helped Gabryelski's defense.
 
 
 35
 Finally, Gabryelski complains that his attorney failed to ask several specific questions of the deputies testifying at the suppression hearing. Because Gabryelski does not indicate what answer the deputies would have given to these questions, there is insufficient showing that the failure to ask them might be prejudicial.
 
 
 36
 AFFIRMED.
 
 
 
 *
 The Honorable John C. Coughenour, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3