**Jose COLON, Appellant,**

v.

**Robert KUHLMANN, Superintendent of the Sullivan Correctional Facility, Robert Abrams, Attorney General of the State of New York, Appellees.**

**No. 268, Docket 88–2295.**

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1988.

Decided Dec. 30, 1988.

Florence M. Kerner, New York City, (Philip L. Weinstein, of counsel), for appellant.

Tyrone M. Powell, Asst. Atty. Gen. (Robert Abrams, Atty. Gen. of the State of N.Y., of counsel), for appellees.

Before KAUFMAN, OAKES, and CARDAMONE, Circuit Judges.

PER CURIAM:

Jose Colon, a prisoner of the State of New York, appeals an order entered by the United States District Court for the Southern District of New York, Miriam Goldman Cedarbaum, Judge, denying his petition for habeas corpus. Colon was convicted of first degree rape in 1984. His conviction was affirmed without opinion, *People v. Colon,* 119 A.D.2d 1013, 501 N.Y.S.2d 547 (1st Dep't 1986), and leave to appeal to the Court of Appeals of New York was denied, 68 N.Y.2d 768, 506 N.Y.S.2d 1051, 498 N.E. 2d 153 (1986), and 70 N.Y.2d 644, 518 N.Y. S.2d 1036, 512 N.E.2d 562 (1987) (on recon-

sideration). Colon now argues that the State violated the due process guaranteed by the Fourteenth Amendment by failing to preserve enough of the rapist's semen for determination of the rapist's blood type.

The rape occurred in Manhattan in 1983, and the victim was an adult woman who did not know the assailant. The police took the victim to a hospital emergency room and asked the attending physician to follow the standard procedures for gathering rape evidence. According to the rape kit procedures, the doctor should have preserved the victim's underpants, but he decided not to insist on taking them after the victim responded with extreme embarrassment to his initial request for them. The doctor put some fluid from the victim's vagina on a slide. That slide later became useless for serological analysis after a police lab test for the presence of sperm. The doctor also used a syringe to withdraw some fluid from the victim's vagina and put the fluid in a vial. By the time an expert examined them, however, neither the syringe nor the vial contained enough sperm for analysis. Thus, there was no evidence that would allow Colon's expert to determine whether the rapist had Colon's serological characteristics.

While this appeal was pending, the Supreme Court decided *Arizona v. Youngblood*, —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). *Youngblood* involved a due process challenge to a sexual assault conviction entered in a case in which the government had failed to collect and preserve enough evidence of sexual assault for serological testing. The Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." —— U.S. at ——, 109 S.Ct. at 336.

We affirm because it is clear that there was no police bad faith in this case. At the trial, Justice Preminger of the New York State Supreme Court held that the police "never unnecessarily destroyed either through negligence or by design any evidence that was gathered," in part because the emergency room doctor's actions were not chargeable to the police. In this action, Judge Cedarbaum held that "the facts of this case [did] not establish the *Trombetta* threshold requirement that evidence have been destroyed or otherwise undermined by conduct of the prosecution." —— U.S. at ——, 109 S.Ct. at 338 (citing *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). Specifically, we affirm Judge Cedarbaum's reasoning as to the three potential sources of evidence. She ruled that the doctor's failure to preserve the underwear was not chargeable to the State, that conducting the test for sperm on the slide did not amount to destroying evidence, and that there was no evidence that the State was in any way responsible for the disappearance of the remaining quantity of fluid.

This is not to say that the police will not be held to higher standards in such cases in the future. Indeed, given the state of the scientific art as disclosed to us on this record, good law enforcement would appear to demand that such valuable evidence be collected and preserved wherever possible. For example, only 10% of the population has Colon's serological characteristics. Such evidence could not only absolve the innocent but also ensure that the guilty do not remain at large to commit other crimes.

JUDGMENT AFFIRMED.