09-3984-cr
United States v. Barnes

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 11ᵗʰ day of January, two thousand eleven.

PRESENT: DENNIS JACOBS,
                          <u>Chief Judge</u>,
             GUIDO CALABRESI,
             ROBERT D. SACK,
                          <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,
             <u>Appellee</u>,

             -v.-                                          09-3984-cr

DAWUD BARNES, also known as Wop,
YUSUF BARNES, also known as Simie,
BRYAN CONKLIN, also known as Wiz,
also known as Shapiro, JASON CONKLIN,
EARL EVANS, BOBBY GONZALEZ, also
known as Dough Boy, also known as
Felix, NIGEL T. JONES, also known as
Nige, ANTHONY PAULINO, also known as
Toast, MARCUS POWELL, also known as
Geech, WILLIE SIMMS, also known as
Dr. God, JAHMAR SMITH, DAVE WOODTON,

**TUERE BARNES, also known as Tuere Barnes, also known as Mark,**
           **Defendants,**

**KHALID BARNES, also known as Big Homie, also known as Lid,**
           **Defendant-Appellant.**
- - - - - - - - - - - - - - - - - - - -X

**FOR APPELLANT:**      Joshua L. Dratel (David A. Ruhnke, Ruhnke & Barrett, Montclair, New Jersey, on the brief), Law Offices of Joshua L. Dratel, P.C., New York, New York.

**FOR APPELLEE:**       Andrew S. Dember, Assistant United States Attorney (Michael A. Levy, Assistant United States Attorney, on the brief), for Preet Bharara, United States Attorney for the Southern District of New York.

Appeal from a judgment of conviction in the United States District Court for the Southern District of New York (Robinson, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Defendant-Appellant Khalid Barnes ("Barnes") appeals from a conviction for racketeering, narcotics distribution, kidnapping, felon-in-possession of a firearm, use of a firearm in connection with narcotics distribution and kidnapping, and murder. Barnes argues that the district court committed several errors, including: (1) admitting evidence obtained from a wiretap when the supporting affidavit contained material misrepresentations and omissions; (2) admitting DNA evidence notwithstanding the government's failure to preserve the evidence; (3) admitting as hearsay evidence location data placing Barnes in particular vicinities that was obtained via cell phone towers; and (4) admitting expert testimony concerning ballistics testing without conducting a hearing pursuant to Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**[1]** "[W]e grant considerable deference to the district court's decision whether to allow a wiretap, ensuring only that 'the facts set forth in the application were minimally adequate to support the determination that was made.'" United States v. Concepcion, 579 F.3d 214, 217 (2d Cir. 2009) (quoting United States v. Miller, 116 F.3d 641, 663 (2d Cir. 1997) (internal quotation marks omitted)); see United States v. Torres, 901 F.2d 205, 231 (2d Cir.), cert. denied, 498 U.S. 906 (1990) ("The role of an appeals court in reviewing the issuance of a wiretap order . . . is not to make a de novo determination of sufficiency as if it were a district judge . . . ." (internal quotation marks omitted)). Because Barnes argues that the affidavit in support of the wiretap contained material misrepresentations and omissions, we review de novo the untainted portions of the affidavit to determine whether probable cause exists. United States v. Canfield, 212 F.3d 713, 717 (2d Cir. 2000). "The ultimate inquiry is whether, after putting aside erroneous information and [correcting] material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." Id. at 718 (internal quotation marks omitted).

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510 et seq., allows for wiretaps in limited circumstances. Law enforcement must apply for a court order before conducting such surveillance, 18 U.S.C. § 2518, and set forth "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," id. § 2518(1)(c). "[G]eneralized and conclusory statements that other investigative procedures would prove unsuccessful" do not satisfy Title III. United States v. Lilla, 699 F.2d 99, 104 (2d Cir. 1983). At the same time, the government is not precluded from resorting to wiretapping "'until after all other possible means of investigation have been exhausted by investigative agents; rather, [the statute] only require[s] that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods.'" Torres, 901 F.2d at 231 (quoting United States v. Vazquez, 605 F.2d 1269, 1282 (2d Cir. 1979)).

The government's affidavits must include more than "generalized and conclusory statements" or "skimpy" details

3

about the specific alternative techniques tried and why they failed or were likely to fail. Lilla, 699 F.2d at 104; Concepcion, 579 F.3d at 215. Barnes argues that the accompanying affidavits at issue failed to give a "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(c). However, the government does not have to conduct an exhaustive investigation in order to comply with the necessity requirement. Here, the government's two affidavits indicate the limited success of each other investigatory method and why the particular methods were inadequate in this case. The government's applications thus adequately "inform[ed] the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods," and therefore satisfied the "minimally adequate" standard. Torres, 901 F.2d at 231 (internal quotation marks omitted).

With respect to material omissions, Barnes argues that the government's failure to disclose the existence of concurrent state wiretaps (which, in part, targeted Barnes) requires suppression of the evidence obtained from the federal wiretaps. Section 2518(1)(e) of Title III mandates that a wiretap application include "a full and complete statement of the facts concerning all previous [wiretap] applications known to the individual authorizing and making the application." However, nothing in the record suggests that the government's affiant was aware of the state wiretaps, which were applied for after the state and federal investigations were severed. Barnes contends that it was nevertheless implausible for the government to be unaware of the state wiretaps given the overlap of the state and federal investigations. Such conjecture is insufficient to demonstrate a knowing omission on the part of the government. Thus, the affiant's omission "was not intentional, but inadvertent" and does not violate § 2518(e). United States v. Bianco, 998 F.2d 1112, 1128 (2d Cir. 1993), abrogated on other grounds, Groh v. Ramirez, 540 U.S. 551 (2004).

[2] The district court admitted evidence that the murder victim's DNA was found on two bills which were seized at Barnes's apartment. Barnes contends that ruling was in error because the government lost the evidence before Barnes could conduct his own DNA analysis. We review a district

4

court's evidentiary rulings for abuse of discretion. United States v. Yousef, 327 F.3d 56, 156 (2d Cir. 2003).

"'Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 457 (2d Cir. 2007) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). "Once a court has concluded that a party was under an obligation to preserve the evidence that it destroyed, it must then consider whether the evidence was intentionally destroyed, and the likely contents of that evidence." Id. "To succeed on a claim that missing evidence would play a significant role in his defense and was thus 'material,' a defendant must meet the two-pronged materiality standard established in California v. Trombetta, 467 U.S. 479 (1984)[,] as well as show that the government acted in bad faith. Under the Trombetta materiality test, 'the evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" United States v. Rastelli, 870 F.2d 822, 833 (2d Cir. 1989) (parallel citations omitted) (quoting Trombetta, 467 U.S. at 489). With respect to loss of evidence in the possession of the government, "sanctions depend[] on the Government's culpability for the loss and its prejudicial effect." United States v. Rahman, 189 F.3d 88, 139 (2d Cir. 1999). A prior inquiry, however, is whether the defendant shows that evidence has been lost and that this loss is "chargeable to the State." Colon v. Kuhlmann, 865 F.2d 29, 30 (2d Cir. 1988).

It is undisputed that the government had a duty to preserve the evidence and was responsible for the loss of the bills. For the following reasons though, Barnes failed to satisfy the two-pronged test set forth in Trombetta: The district court found that the loss of the evidence was not the product of bad faith, a finding that is not clearly erroneous; Barnes could have challenged the DNA expert's results by way of cross-examination; and Barnes's contention

5

that independent DNA testing could have proven that the victim's DNA was present on the bills solely as a result of his handling of the bills would have failed to establish his innocence.  In light of all of this and the adverse-inference instruction the district court gave the jury, it did not abuse its discretion in admitting the DNA evidence.

**[3]**  Barnes argues that the district court erred in admitting cell site information (data retrieved when Barnes made a call from his cell phone), which placed him in the area where he purchased the murder weapon and in the vicinity of the victim's apartment around the time of the murder.  Barnes maintains that the evidence was inadmissible hearsay and, in the alternative, violated his rights under the Confrontation Clause of the Sixth Amendment.  Even assuming the district erred in admitting the cell site evidence, the error was harmless.  "Error is harmless if it is highly probable that it did not contribute to the verdict."  United States v. Kaiser, 609 F.3d 556, 573 (2d Cir. 2010) (internal quotation marks omitted).  In determining whether the wrongful admission of evidence constituted harmless error, we consider: "(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted [evidence]; and (4) whether such evidence was cumulative of other properly admitted evidence."  United States v. Kaplan, 490 F.3d 110, 123 (2d Cir. 2007).  "Where the erroneously admitted evidence goes to the heart of the case against the defendant, and the other evidence against the defendant is weak, we cannot conclude that the evidence was unimportant or was not a substantial factor in the jury's verdict."  United States v. Rigas, 490 F.3d 208, 222 (2d Cir. 2007).

During trial, the government offered overwhelming evidence, including: thirty-eight witnesses, one of whom testified that Barnes told him he was not concerned about the murder charges because the government would never find the murder weapon; numerous recorded telephone conversations, including calls made on the night of the murders; physical evidence recovered at the scene of the murders and at Barnes's apartment; the murder weapon; and ballistics evidence establishing that the bullets recovered from the murder victims' heads were fired from the murder weapon.  Weighed in the balance against all this evidence, any error in admitting cell site evidence that placed Barnes in the vicinity of the victim's apartment was harmless.

**[4]** Finally, Barnes argues that the district court abused its discretion in admitting the testimony of the government's ballistics expert.  The district court is "assign[ed] . . . the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Daubert, 509 U.S. at 597.

Barnes moved in limine for a Daubert hearing, a motion that was denied without prejudice to reconsideration at trial.  However, Barnes raised no objection to admission of the ballistics expert's testimony at trial, as required by Fed. R. Evid. 103(a)(1).  We therefore deem this argument waived.  See, e.g., Baker v. Dorfman, 239 F.3d 415, 423 (2d Cir. 2000) (holding that an argument not raised below is ordinarily waived).  Cf. Nimely v. City of New York, 414 F.3d 381, 397 n.12 (2d Cir. 2005) (concluding that the plaintiff did not waive his Daubert challenges because he brought a "motion in limine [that] clearly raised the issues both of [the expert's] qualification . . . and of the scientific reliability of the testimony itself").  It is true that even in the absence of objection, we may "tak[e] notice of plain errors affecting substantial rights"  Fed. R. Evid. 103(d).  But Barnes's objections, which go to the reliability of ballistics evidence in general, do not persuade us that it was plain error, or indeed error at all, for the district court to allow the testimony.

Insofar as Barnes appeals from the denial of his motion in limine, the court did not abuse its discretion.  When a district court conducts "an extensive consideration of the expert's credentials and methods," United States v. Williams, 506 F.3d 151, 162 (2d Cir. 2007), and "consider[s] the use of ballistic expert testimony in other cases," id. at 161, the court has "effectively fulfilled its gatekeeping function under Daubert" and the "formality of a separate hearing [i]s not required," id.

We have considered Barnes's remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of conviction is **AFFIRMED.**

> FOR THE COURT:
> CATHERINE O'HAGAN WOLFE, CLERK

7